No. 9569.

MRS. ANNIE HUYGHE VS. HENRY BRINKMAN.

Where a motion to dismiss the appeal is made on the ground of the deficiency of the transcript as shown by the clerk's certificate, and the transcript is completed and the missing evidence supplied, and the certificate converted under a *certiorari* from this court before the case is submitted, and no delay is occasioned by the steps taken for the completion of the transcript, the appeal will not be dismissed.

When in a possessory action the parties urge claims and counter claims which necessarily

involve the question of title, and are clear incidents of ownership, an issue which can not be tried in such an action, the parties will be relegated to the petitory action as a necessary step to a proper adjudication of such claims.

Courts cannot be required to decide controversies by piece-meals—a decision of the fundamental question must precede a discussion of rights incident thereto.

APPEAL from the Civil District Court for the Parish of Orleans. *Monroe, J.*

*Alfred Goldthwaite* for Plaintiff and Appellant.

*Bayne & Denègre* and *Braughn, Buck, Dinkelspiel & Hart* for Defendant and Appellee.

## ON MOTION TO DISMISS.

The opinion of the Court was delivered by

TODD, J. This motion is grounded on the deficiency of the transcript through the alleged fault of the appellant.

Before the case was submitted, the documents alleged to be missing were supplied under a writ of *certiorari* from this court. Furthermore the defective certificate of the clerk accompanying the transcript when filed, was supplemented and corrected, and this new certificate showing a full and complete transcript was by the permission of the court filed on the motion of the appellant.

Finding, then, a perfect transcript before us, containing all the evidence, documents and proceedings had in the lower court, and no delay having been caused by these efforts of the appellant to complete the transcript, we see no reason whatever to dismiss the appeal.

The motion to dismiss is, therefore, denied.

## ON THE MERITS.

WATKINS, J. This is a possessory action instituted by plaintiff for the recovery of an improved lot on First street in this city, coupled with a claim for rents and revenues, to which was urged a general denial and a special defense by the defendant to the effect that " he had, through himself and his vendors, held peaceable and undisturbed possession of said property for fully ten years prior to any claim set up by the plaintiff * * * and he alleges that, as possessor in good faith, he is entitled to all rents and revenues of said property ; or if condemned to pay such revenues he is entitled, as possessor in good faith, to be reimbursed the *taxes* and *expenses* incurred for said property."

Suit was filed on October 22, 1879, and petitioner alleges the disturbance of her possession on the 2d of November, 1878, and she demanded rents at the rate of $40 per month from that date with interest.

This Court decided that the plaintiff was entitled to recover the possession of the property and rents at $30 per month since the 2d of November, 1878, with interest, and that the case be remanded to receive proof of "the cost of taxes and *whatever else* he can properly plead in offset of the plaintiff's demands." This court further said : "We do not determine the question of his possession in good faith, but it is fair that he should have an opportunity to show it."

In the court below the plaintiff filed a plea in which she elects and requires the demolition of the constructions and works made by defendant on the premises sued for.

From a judgment in favor of the defendant for $1900, with interest, the plaintiff appealed.

The record discloses that defendant purchased the property in controversy at a partition sale between the heirs of Robert Huyghe, former husband of plaintiff, who continued in possession after his death.

The partition proceedings were duly homologated, notwithstanding plaintiff's opposition thereto.

Defendant purchased, at public auction, on June 1, 1878, and on the 17th of that month, a formal title was executed therefor by Octave Morel, notary.

He then procured a writ of ejectment and dispossessed the plaintiff; and she sued him for damages resulting therefrom. 34 Ann. 832, 1179.

The title of defendant is perfect in form, and recites all the necessary elements of a sale; and he paid a large part of the price of the adjudication. It is notarial in form, and three of the heirs of the deceased signed it. It possesses all the *insignia* of a *joint* title in the sense of R. C. C. 3484 *et seq.*

The plaintiff was a party to the partition proceedings, and some of the heirs were of full age and seem to have acquiesced therein. The inventory of succession of Robert Huyghe taken on the 3d of March, 1877, was valued at $15,770.44.

Conceding, for the argument, that the Second District Court had no jurisdiction *ratione materiæ* to order a partition of succession property ; it had jurisdiction of the succession itself. If such a sale be a nullity, it is a *relative* one only.

One who has just reason to believe himself master of the thing which he possesses, is a possessor in good faith. R. C C. 3451.

He is a possessor in bad faith who assumes that quality well knowing that he has no title to the thing, or that his title is vicious and defective. R. C. C. 3452.

In no one of the various suits and proceedings *pro* and *con*, has this

Huyghe vs. Brinkman.

title been tested or put at issue. Brinkman has, to all appearances, full confidence in his title, and his testimony supports that belief.

The doctrine announced in Walworth vs. Stephenson, 24 Ann. 251, to the effect that "a purchaser under a judicial sale is in bad faith, and liable for rents and damages, if the judgment under which he purchases is absolutely void," etc., has not been followed by this Court. Hickman vs. Dawson, 35 Ann. 1036; Eldridge vs. Tibbits, 5 Ann. 380; Carroll vs. Cabaret, 7 O. S. 406; Frique vs. Hopkins, 4 O. S. 224; Dufour vs. Camfranc, 11 O. S. 715; Roberts vs. Brown, 14 Ann. 985; Giddens vs. Mobley, 37 Ann. 417.

In the briefs of counsel in the last case *Walworth* vs. *Stephenson* was pressed upon this Court's attention without avail.

In those cases pleas of prescription and demands for reimbursement for improvements made and taxes paid, were urged. Their allowance depended upon the proof disclosing the possession of defendants in good faith.

In *Hickman* vs. *Dawson*, a large sum was allowed for improvements, and in *Giddens* vs. *Mobley*, the plea of ten years' prescription was sustained, notwithstanding this Court, in the former case, held the title *absolutely* null and *void*.

We conclude that defendant was a good faith possessor at the commencement of his possession, and that good faith has necessarily continued. 9 Ann. 171, State vs. Smith; 14 Ann. 605, Robert vs. Brown; 33 Ann. 441, Hickman vs. Dawson; 34 Ann. 705, Wederstrandt vs. Fuyher; R. C. C. 3482.

Plaintiff places reliance on R. C. C. 503, as supporting the plaintiff's theory of defendant's possession in *bad faith* since suit.

It reads as follows, viz: "He is a *bona fide* possessor, who possesses as owner, by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant of.

"He *ceases* to be a *bona fide* possessor from the moment *these defects* are made known to him, or are declared to him by *suit instituted for the recovery of the thing by the owner.*"

We understand that to mean a petitory action, or an action in nullity of the possessor's *title*.

A possessory action cannot accomplish that result.

In *Kibbe* vs. *Campbell*, 34 Ann. 1163, this Court held correctly that, after the good faith possessor has been dispossessed by one holding a better title than himself, the former has a right of action for compensation for improvements and taxes which enured to the benefit of the soil, or enhanced its value.

We are of the opinion that under the express provisions of R. C. C. 508, plaintiff was not in the attitude to compel defendant to demolish, or remove the buildings constructed on the property in dispute, because defendant was not a bad faith possessor.

It reads : " Nevertheless, if the plantations, edifices and works have been made by a third person evicted, but not sentenced to make restitution of the fruits, because such persons possessed *bona fide*; the owner shall not have a right to demand the demolition of the works, plantation, or edifices, but he shall have the choice either to reimburse the value of the materials and the price of workanship, or to reimburse a sum equal to the enhanced value of the soil."

*This* election plaintiff has not made. There has been no proof administered as to the enhanced value given the soil by reason of the improvements, for which reimbursement is claimed ; but there has with regard to the value of the materials and the price of workmanship, and we shall predicate our opinion upon it, as it may be fairly assumed that plaintiff was content with the election the defendant had made.

The defendant claims " for improvements and to reimbursement for the same; for removal of old stables, building material for and repairing the roof of the house, etc., $188.28 ; for painting, material and labor employed in the construction of a new stable, $270 ; carpenter's work, brick, mortar, lumber, painting and hardware, $960.90 ; and other items aggregating $210.

He also claims for State and city taxes paid during seven years, a little over $400, and other small items, aggregating $405.02—$2374.20.

There are introduced in evidence by defendant a statement of his tax assessments from 1878 to 1884, and sundry receipts from carpenters, journeymen, lumber-dealers and dealers in paints, oils, glass, etc. ; receipts for insurance premiums, for taxes paid, etc., and for and during the years 1880 to 1885 inclusive.

The defendant, as a witness, states that he paid a large part of the purchase price, the taxes, repairs and cost of improvements, during the time he occupied the property as owner, and the insurance premiums since 1878.

He says that when he went into the house it was dirty and in need of repairs, and that he had it thoroughly repaired and cleansed, painted and calsomined.

He says that the roof was bad, the keys lost, and window panes broken, and an entirely new fence was necessary, and same was built.

He states that he paid the various bills that were introduced in evidence, and had the repairs made that are charged for.

His statements are in great part supported by the evidence of Otto Knows, H. Hillevig and J. Barney, but they are opposed in part by plaintiff, who says, that the house on the premises was comparatively new, and was in need of no repairs, but she did not know what improvements he had made.

Her statement is supported by Fred. Wing, in a general way, and by Wm. Seymour; but their testimony has no significant bearing on the case.

In the well-considered opinion of the district judge he says:

"In view of the judgment against defendant for rent at $30 per month since November, 1878, it is fair that he should be allowed, in compensation, all that he has expended for the preservation and improvement of the property." In this view we concur.

The evidence of the defendant is not as clear and satisfactory as it should be, in some particulars, and for some items charged for.

The aggregate amount of his claim is $2,450.97, and same was by the district judge reduced to $1900, which, he " thinks, will fairly reimburse all expenditures properly chargeable to plaintiff," which sum was held to offset and compensate *pro tanto*, the judgment in plaintiff's favor for rent.

A careful examination of the record fully satisfies us of the correctness of the judgment of the district court, and it is therefore affirmed with cost.

## On Rehearing.

Poché, J. A careful consideration of the consequences which might flow from our last decree in this very complicated litigation has decided us to retrace our steps, and to make an effort to bring the parties into line so as to open the way to a logical solution of the many difficulties which the record, in its present shape, forces on the judicial mind.

In our previous opinions in some of the branches of this controversy we have more than once intimated that the vital question involved in it, namely, the question of title or ownership, had not been presented in any of the pleadings. And yet, in the present case, we are called on to adjudicate on important questions which are necessary incidents of the ownership of the property, or, in other words, to treat and dispose of effects before considering the essential causes of the same.

Thus we are expected to attach effects to the alleged good faith of

the defendant's possession as a test of his right to recover his taxes, and other expenses in repairing and preserving the property, in anticipation of an eventually possible judgment which may decree him to have been all along the true and lawful owner of the property.

In our opinion in the case between the same parties, in 37 Ann. 240, we settled the character of this suit to be the possessory action. We allowed rents to the plaintiff possessor for the time that she was and remained ejected, and remanded the cause for trial of the defendant's claim for reimbursement of his taxes and for the value of his improvements.

Now, in the present appeal, and especially on this rehearing, the argument of counsel is almost exclusively directed to the validity of Brinkman's alleged title. In point of fact, the good faith of his possession is intimately blended and inseparably connected with the validity of the partition sale, at which he became adjudicated of the property.

As argued by counsel, if the court ordering the sale had jurisdiction, a question which he was bound in law to examine. his possession is in good faith, but to reach that conclusion it is inevitably necessary to hold at the same time that his alleged title is good, and *vice versa.*

Hence, we have to confront this state of things—the question of ownership, which is not presented in the pleadings, is at the threshold of the discussion of the defendant's alleged possession in good faith— and a correct solution of the latter must in law and in logic be preceded by a decision of the former.

We therefore conclude that the right of defendant to recover his taxes and other expenditures, depending on his good faith, cannot be adjudicated at the present stage of the litigation, and that it must of necessity and in justice be relegated to the trial of the question of title or ownership, as soon as the parties make up their minds to present that issue under proper pleadings.

In a petitory action, and in such action alone, all the vexed questions which bristle in this controversy, can be properly discussed and logically and legally disposed of.

A judgment in such an action will take up the whole series of adverse claims, of title, of rents and revenues, and the incident right of compensation for alleged necessary disbursements. Courts cannot be required to entertain controversies by morsels or piece-meals as the caprices of parties may dictate.

The fundamental question must underlie the discussion of legal incidents and consequences naturally flowing therefrom.

It is therefore ordered, that our previous decree herein, rendered on the 17th of May last past, 1886, be annulled and set aside. It is now ordered, adjudged and decreed that the judgment appealed from, allowing to defendant, Brinkman, the sum of $1900, on account of taxes paid and improvements made by him on the property in suit, be annulled, avoided and reversed, at the costs of defendant in both courts, under the reservation of defendant's right to claim the amounts set up by him in this litigation, in a future proper proceeding, his right to ultimately recover the costs, which he is herein condemned to pay, in case of a final decision in his favor either on the question of title or in the recovery of his claim aforesaid—and all other claims growing out of the question of his alleged ownership.

## On Petition for Modification of Decree.

Defendant prays that our last decree in this case be modified so as to restrict the execution of the judgment previously rendered in favor of plaintiff for rents, to any excess of such judgment over the sum of $1900, for which defendant had obtained judgment in the lower court, which judgment we have just reversed.

The relief prayed for is equivalent to an order partially suspending the execution of a final judgment rendered by this Court since March of last past, more than eighteen months ago.

It is apparent that the judgment which is the property of plaintiff, is absolutely beyond our control, and that we are powerless to grant the relief which defendant asks in this proceeding.

It is therefore ordered, that the petition of defendant be dismissed, and that the relief which he prays for be denied.