BREAUX, C. J.
Plaintiff complains of trespass committed on his land, to wit: N. y2 of N. E. % of section 9 and W. % of N. W. % of section 10, township 10, range 1 E., by cutting down trees and taking them away.
He claims $27,726.36 as damages for the loss of the trees taken by defendant, and $1,000 as punitive damages, with legal interest.
Plaintiff and defendant claim title respectively from a common author, to wit, B. F. Boyett, whose title is not questioned by any of the parties.
The Louisiana Lumber Company bought the land in question from the Louisiana Central Company on the 27th day of May, 1905.
The Xjouisiana Central Company, defendant’s vendor, bought it from the Louisiana Midland Company on the 20th day of May, 1905.
Defendants claim that this last company bought the land from B. F. Boyett.
Of this later.
The defendant alleges, in substance, that the Castor Company, of which plaintiff was a partner, had at one time owned this land, and that in consequence the plaintiff is es-topped from asserting an adverse claim to its title, as his company sold the land he afterward bought.
Plaintiff’s chain of title begins with the sale by Boyett to him (plaintiff) on the 4th day of January, 1901.
Before the sale to plaintiff, Boyett, the original vendor, sold the timber on the land to H. P. Rochelle.
The deed was never recorded.
Rochelle sold the timber thereon to the partnership of Whittaker & Whittaker. The deed of the latter was recorded.
The deed the defendants held related to the trees only, and there was a time stipulated in nearly all of the deeds within which to cut down and haul away the trees.
The Castor Lumber Company, for instance, in which plaintiff had an interest, sold the timber to Carlisle & Co. The time limit for removal was to 1902.
Plaintiff charged that in the years 1905 and 1906 the Louisiana Lumber Company knowingly trespassed and removed from the land 1,875 trees, aggregating a total of 1,848,-424 feet of lumber, worth $27,726.36, which as plaintiff alleged, the defendant appropriated.
The defendant called its vendors in warranty, and these vendors called theirs to the end of the last vendors.
The defendants and warrantors, among other grounds, pleaded equitable estoppel on the ground that plaintiff had represented them and could acquire no interest against them because of his agency to them.
This is not a case in which the facts can very well be separated from the law: that is, a complete statement of facts made to be followed by a discussion of the law points to any extent.
There are a number of facts bearing upon the issues. Those that are directly pertinent will be hereafter referred to and quoted.
Title:
Plaintiff had from the first a complete title to the land. His deed was timely recorded. He went into possession and sought to exercise the fights of an owner. While he-did not occupy the land himself, his vendor became his locum tenens. After he left the place, he appointed some one who lived near to have an eye on the place.
Defendants:
There is a missing link in defendant’s chain of title to the timber.
*699 Owing to the negligence of the purchaser from Boyett, the deed was not recorded.
While on the subject of registry, it may as well be stated here that it does not appear that the Rochelle deed to the Southern Grocer Company was ever recorded.
There is a deed recorded on the 1st of September, 1899, in which this last-named company appears as the vendor to the Castor Company for the price of $125. The deed contains the following:
“This sale and transfer is made with the understanding that said timber is to be cut and removed within the time limit given by H. P. Rochelle on the nineteenth day of June, 1899, same being time limit given H. P. Rochelle by Benjamin Boyett.”
The foregoing extract and other evidence/ on the subject lead to the inference that the sale, beginning with the sale from Boyett to Rochelle, different from the sale from Boyett to the defendant, included only the trees, which the buyer, according to the terms and conditions of the sale, “must remove within a stated period.”
True, the transfer of Whittaker & Whit-taker to the Southern Grocer Company contains no reference to a time limit, but the title of the Southern Grocer Company, vendees of the Whittakers, to the Castor Company, does contain tne following, to wit:
“This sale and transfer is made with tlie understanding that said timber is to be cut and removed within the time limit given us by H. P. Rochelle on the nineteenth day of June, 1899, same being time limit given H. P. Rochelle by Benjamin Boye'tt.”
Again, in the year 1899, the Whittakers, in a letter in evidence • offering to sell their right to the timber stated:
“The same to be gotten out as fast as practical.”
The Castor Lumber Company in 1899, being at that time the holder of the timber, and wishing to retain its right to remove the trees, for a consideration paid Boyett obtained from him further time for the “privilege of extension of time for cutting, hauling and removing timber.”
The timber limit for removing the trees is also set forth in a deed of mortgage and subsequently in a deed of sale of the property mortgaged.
The right to cut trees was not exercised at all.
The lost right, transferred to defendant by mesne convey'ance, is the extent of defendant's claim. It cannot be of any avail against plaintiff’s recorded deed, dating back many years.
This is, if anything, a stronger case for plaintiff than was the case for defendant in the St. Louis-Thibodeaux Case, 120 La. 834, 45 South. 742.
The cited decision precluded defendant from recovering the trees here.
Notice:
The plaintiff through his counsel in the year 1905, about the time the defendants began to cut trees on the land, gave notice to defendants to desist; referred defendants to the record where they would find that they had no right to the timber.
The defendants’ answer was direct. They refused to stop cutting and claimed the land as their own.
This notice of plaintiff and the refusal of defendants was urged by the former as ground for claiming large damages and punitive damages.
Estoppel:
This plea is thoroughly argued on the part of the defense. Plaintiff was one of the partners of the company known as the “Castor Company.” Plaintiff in the interest of this and another company, known as the “Car-lisle Company,” each connected in some way or another with defendants’ chain of title, while in their employ located for them timber lands on the ground.
We take it, as is sometimes done by pro-motors, some of the lands were bought in his *701 name which he subsequently transferred to the owners. The tract in this controversy was not transferred.
There is nothing in the testimony to show that defendants have claim to it. They presented a deed to plaintiff for his signature.
He refused to sign. In answer he said:
. “Do you take me for a fool, or what do you think I am, that I would give one hundred sixty acres of the best pine land in the parish to the Louis Werner Sawmill Company after they treated me like they did?”
The name of Werner is another connected with one of the different companies that have been mentioned in this case as concerned in the 160-acre tract.
The defendants did not insist, did not ask for specific performance, and did not seem to have that right.
As to the agency of plaintiff: It did not preclude him from buying land on h±s own account. The amount paid for the land was small, only $100. He may well have bought it for his own account.
At any rate, the testimony before us does not justify us in holding that he is not the owner. He was not estopped.
Now as relates to the Louisiana Midland Company: The plaintiff acquired and owned stock in the concern. He became its agent to buy timber lands. The company was organized after the date of the sale from Boyett to him.
In one of the deeds of the company, this land was included. Plaintiff was not a party to the deed of transfer and does not appear to have consented to the transfer in any way.
It seems that the land was assessed in the name of the company and taxes were paid thereon by the company.
That in itself does not have the effect of conveying title. Plaintiff testified that he considered it in the light of a favor for his many services to the company that it should pay these taxes.
This is not as satisfactory as it should have been. At the same time it does not afford ground sufficient to hold plaintiff bound by estoppel. It is not equivalent of a title or in the nature of a title. It does not appear anywhere in the evidence. that he acknowledged with any degree of positiveness that this land was owned by defendants or any of defendants’ officers.
Trespass:
We have not found this an aggravated ease of trespass, although it was trespass. The notice given by plaintiff to defendant to stop trespassing was not as convincing as he seems to think. The fact stated in regard to the title is not absolutely sustained by the record, although this notice was given.
In referring, for instance, to the Whittaker deed, it mentioned that it contained a time clause to remove the timber. This deed did not contain such a clause unless by inference growing out of the fact that subsequent to the deed and in another contract the time limit is referred to as dating from the first deed; that is, the Boyett deed of sale.
Again, when the notices were received, defendants’ attorney was consulted. His advice was that they had a right to the timber; that the title to it rested in them. This advice, we are informed, was not lightly given. Other attorneys entertained the same opinion at the time.
It is only since the decision in the before-cited case that the question is considered settled.
There was no wantonness in defendants’ trespass. We think it was at most an ordinary trespass.
Damages:
As defendants were not knowing and willful trespassers, we have no hesitation in coming to the conclusion that the damages should not be fixed in accordance with the rule laid down in the Guaranty Company v. Drew Investment Company, 107 La. 251, 31 South. 736, and Wooden-Ware Co. v. U. S., *703 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230. In these eases the trespass was wanton and willful.
The plaintiff is entitled to the value of the timber; nothing over its value.
The learned judge of the district court fixed the number of trees at 1,500. We think fairly enough. The price, $2 each tree, has every appearance of being the value, aggregating 83,000.
Considering the limited number of acres, the small amount that the land sold for at a date not so very remote, and considering the fact that the trees had before the trespass to some extent been culled, we do not think that we should change the amount.
The law and the evidence being for plaintiff, the judgment is affirmed; costs of appeal to be paid by appellees. Newman v. Baer, 50 La. Ann. 323, 23 South. 279.