SOMMERYILLE, J.
Plaintiff sues defendant for damages in the sum of $15,720, with interest, for an alleged trespass by defendant in 1909 upon the land of plaintiff, and for gas used and consumed by it from the land and well of plaintiff. Plaintiff alleges that defendant drilled a well on land belonging to her, and extracted “therefrom the natural gas which underlay the surface of said land, and which was the property of petitioner.” She also alleges that defendant used as a pretense for trespassing upon her land “a so-called lease executed by petitioner in favor of defendant on the 6th day of February, 1907,” which lease had been canceled and annulled.
Defendant answered that it had drilled the well under the lease referred to, in good faith, after having been advised by counsel that it had the right to so drill; that it could not be held liable for exemplary dam *612 ages as a trespasser in bad faith; that the suit to annul the lease between plaintiff and defendant was not filed until after the completion of the well; and that, if it is indebted to plaintiff, it can be only for the actual value of the gas in place under the surface of the ground owned by plaintiff, and which was used by it.
There was judgment for defendant, and plaintiff has appealed.
This suit is a sequel to the one wherein the lease referred to was annulled in 127 La. 592, 53 South. 874. There the lessor termed the instrument which she sued upon a “lease and oil contract,” and she asked “for judgment canceling and annulling the said lease of date February 5, 1907, and that she be placed in possession of said property, free from any claim of said company under said lease,” on the grounds: (1) That said lessee obligated itself to commence a well on the lands leased within two years, but that it had failed to use due diligence, though more than two years had elapsed; (2) that said lease contains a potestative condition; (3) that said lease is void for failing to fix any time that it should continue to remain in force; and (4) that the lease was to have continued as long as oil or gas in paying quantities was found or produced, and, as no oil or gas was found or produced in paying quantities, that it was terminated and at an end, “or, at least, it is void for uncertainty as to its term.”
In disposing of that case, we found that the contract sued upon contained features of both a sale and a lease,'but construed it to be a lease, and that defendant had failed to use due diligence in drilling for oil and gas, although we did not place our decree upon that ground, for we say, “It may be that the payment of small amounts for extension kept the lease alive,” but that the lease came to an end because, under the terms thereof, it was to continue during the time that oil or gas was found or produced in paying quantities, and oil and gas had not been so found or produced. The evidence showed that defendant had drilled three times for oil, and that a gas well had been brought in; but we considered it of small importance, and as not being within the above terms. It is now made to appear in plaintiff’s petition in this case that we were in error in our estimate of the value of this gas well, for she alleges that defendant owes her $15,720 for gas taken by it, during eighteen months, from the well which it had drilled on her land. In recognizing plaintiff’s legal right to have the lease canceled and annulled, and in entering a decree to that effect, we referred to a moral consideration which would influence some persons to show s®me recognition of defendant’s efforts and large expenditure of money by not insisting upon an immediate execution of the legal right to have the lease annulled. And we also there referred to the fact that the exploiting of plaintiff’s land for oil by defendant had enabled her to sell a portion of her holdings for many times the price which she could have sold for before these exploitations by defendant 'on parts of plaintiff’s property had been made.
Had plaintiff made the allegation in the suit to annul the lease which she now makes, that the gas well brought in by defendant was very productive, our decree annulling the lease would not have been based on. that provision of the lease which continued the lease in force only during the time that oil or gas was found in paying quantities.
Our review of the former case is in view of the defense that defendant acted in good faith in continuing in the possession of the leased premises, and that it cannot be held for exemplary damages as a trespasser in bad faith.
[1, 2] We say in the case of Rives v. Gulf Refining Co., 133 La. 178, 62 South. 623, that the law with reference to sales and leases in *614 the Civil Code cannot be always applied to oil leases, and that the latter contracts.are of the nature of both sale and lease, and that they have features which are not applicable to either. We may not, therefore, apply the law with reference to good or bad faith with the same degree of certainty as would attend the interpretation of the law with reference to an ordinary trespass.
The question here presented is whether the defendant was in legal bad faith by continuing in possession of plaintiff’s land under the lease entered into between them until a judgment of court decreed the lease to be canceled and annulled.
[3, 4] Plaintiff argues that the law declares defendant to have been in bad faith in article 503, C. C. But that article has reference to, and is under the title of ownership. It reads:
“He is bona fide possessor who possesses as owner by virtue of an act sufficient in terms to transfer property, the defects of which he was ignorant. He ceases to be a bona fide possessor from the moment these defects are made known to him, or are declared to him by a suit instituted for the recovery of the thing by the owner.”
And in article 3452 it is provided:
“The possessor in bad faith is he ■ who possesses as master, but who assumes this quality, when he well knows that he has no title to the thing, or that his title is vicious and defective.”
These principles cannot be applied to the tenure by which defendant held possession of plaintiff’s land. It is true that the trespass with which plaintiff charges defendant was made both before and after the suit to annul the lease was instituted; yet the bad faith declared in article 503 has application to one claiming as owner, and not as lessee, and the suit therein referred to is the petitory action. Huyghe v. Brinkman, 38 La. Ann. 836.
The state Legislature has been silent on the subject of mineral rights and contracts, and the Code is equally silent with reference thereto. Doubtless, for the reason suggested in the Rives Case, supra, that minerals under and within the soil of Louisiana were not in the contemplation of the lawmakers at the time that the Code was adopted. So, therefore, when plaintiff and defendant undertook to enter into a contract of lease of oil lands, containing terms which were inconsistent with, if not antagonistic to, the laws and jurisprudence of the state, and they did so under the advice of learned and competent counsel, the court will be slow in holding one of tide parties to a technical bad faith in insisting upon a compliance with the terms of the lease as interpreted by it and its legal adviser, or in continuing in possession under a provision which continued the lease in force and effect so long as oil or gas may be produced in paying quantities, specially when there is a difference of opinion as to what may be properly termed paying quantities. Gas and oil leases and contracts are apart by. themselves. There is scarcely any comparison between them and the ordinary farm or house lease, although there is some resemblance in them to coal or solid mineral leases.
The defendant’s rights, under the lease, were to go upon the land of plaintiff and to explore for oil and gas, which rights were to continue through two years, and, if either was found within that time, the lease was to have been continued so long as oil was found in paying quantities. Oil was not found by defendant, and gas was not found in paying quantities until after the expiration of the two years, when plaintiff demanded that the lease be canceled and annulled. That claim was resisted by defendant because it was then producing gas in paying quantities, which claim was made in good faith on its part, although we found that it was not in compliance with the letter of the contract, and we decreed the lease canceled and annulled. This view of the law may be contrary to that applied to the ordinary lease; but Mr. Thornton on the *616 Law Relating to Oil and Gas, p. 1103, lays down the principle that oil and gas leases are construed most strongly against the lessee, and in favor of the lessor. But, in a suit sounding in damages, the construction given by Mr. Thornton does not apply.
The- claim for damages made by plaintiff, as set forth in her petition, is based on her ownership of the “gas used and consumed from the land and well of petitioner,” although the well was drilled by defendant, under the. assumption that it was acting under the lease hereinbefore referred to. It is not a suit for damages to the land, for the well is an advantage to the land. It is principally, a suit for so much gas which plaintiff alleges defendant took from her land.
The gas which plaintiff claims to have owned, and which she alleges was used by-defendant, refers to the gas which was reduced to .possession after having been produced from beneath the surface of the earth. Until the gas was produced, plaintiff had the exclusive right of reducing the gas below the surface of the land owned by her to possession, and to become the owner thereof, and this right she had leased to defendant. If, because of a. wrong interpretation of the lease, defendant produced gas from plaintiff’s land, and converted it to his own use, it may be held for the value of such gas, although it is stipulated in the lease, “If any well on said premises produces gas in sufficient quantities, and if the lessee shall market same, or use the same off of the said premises, then the said lessor shall be paid at the rate of $100.00 per year for each and every well the product of which is so marketed or used off of said premises,” for the reason that the gas well from which the gas was produced was not a producing well in paying quantities during the existence of the lease. The lease was not the law between the parties when the gas was produced and used by defendant.
The evidence shows that defendant wrongfully entered upon the land of plaintiff, although in good faith; that it wrongfully penetrated the soil for gas, and wrongfully usurped thb right of drilling on the property of the plaintiff, which right to drill was the exclusive right of the plaintiff; and that it took possession of gas which became the property of plaintiff -when it was produced and reduced to possession.
That oil and gas in their natural state, under the surface of the ground, are not owned by the owner of the land is held in a long line of decisions. Wadkins v. Atlanta & Shreveport Oil & Gas Co. (No. 19315; not for publication); Rives v. Gulf Refining Co., 133 La. 178, 62 South. 623; Ohio Oil Co. v. Indiana, 177 U. S. 190, 20 Sup. Ct. 576, 44 L. Ed. 729; Brown v. Spilman, 155 U. S. 665, 15 Sup. Ct. 245, 39 L. Ed. 304; Westmoreland Gas Co. v. De Witt, 130 Pa. 235, 18 Atl. 724, 5 L. R. A. 731.
Plaintiff, therefore, has the right to recover damages from the defendant for the usurpation of and abuse by it of the exclusive right of drilling, which right was the property of the plaintiff, the owner of the soil, and of appropriating the gas produced by it from the soil of plaintiff; and the value of such gas at the well is the measure of damages for which defendant is liable.
It is impossible, from the evidence contained in the record, to say what damages, if any, were suffered by plaintiff, because of the drilling done by the defendant. The nature of gas deposits is such as to render it difficult, if not impossible, to estimate the loss of gas under the land belonging to plaintiff, resulting from the well drilled by defendant, while wells were being drilled in the surrounding oil and gas fields. The evidence in this ease shows that, although the well in controversy was shut in as soon as the judgment canceling and annulling the lease had become final, the gas had diminished 25 *618 pounds in pressure between tbat date and one subsequent thereto. The evidence shows that plaintiff’s land had lost a large portion of its gas value during a period in which no gas was being taken from the well drilled on it. It follows that this loss would have been sustained, if no well had been drilled on plaintiff’s land, because of the existence of nearby wells.
In addition to the value of the gas appropriated by defendant after its production, there will be added a reasonable value for the use of the land in estimating the damages to be allowed plaintiff. We have before held that the land of plaintiff was not damaged by the bringing in of the gas well.
The evidence shows that the value of the privilege of entering upon the land of another for the purpose of exploiting for oil or gas does not exceed $200 per annum for each gas well, where the lessee provides all the appliances necessary in the caring for and transporting the gas; and that would amount, in this case, to about $333.33.
AVe have found that defendant trespassed upon plaintiff’s land; nevertheless it was not an aggravated case of trespass. It held a contract of lease with plaintiff, which required judicial interpretation as to its limits, and defendant acted under the advice of counsel, which advice has not been impugned in any manner. Caddo Oil & Mining Co. v. Producers’ Oil Co., 134 La. 701, 64 South. 684; McGee v. La. Lumber Co., 123 La. 696, 49 South. 475; Woodenware Co. v. United States, 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230.
The real value of the gas used by plaintiff is its value in place. But the plaintiff was not the owner of the gas at that time, and the record does not disclose any'method by which the value thereof might be arrived at. The only method for measuring such value suggested is to ascertain the value of the gas after it was brought to the surface and reduced to possession, and then subtract the cost of reducing to possession.
In arriving at the value of the gas, we shall adopt the largest estimates made by the witnesses. Assuming, then, for the purpose of arriving at a basis for the judgment in this case, that the boilers used by the defendant were 40 horse power boilers, that they ran continuously for 24 hours daily, and that each boiler used 48,000 cubic feet of gas per day, and that the gas was worth 1% cents per 1,000 cubic feet at the mouth of the well, then the value of gas used by the defendant during the 2,832 boiler days, alleged in plaintiff’s petition, would amount tó $2,-039.04.
Plaintiff claims the ownership of the well drilled by defendant, at an expense of $2,-200. The expense of drilling the well and the cost of its equipment constitute the cost of the production of the gas, and, as the cost of the production exceeds the highest possible estimate of the value of the gas at the mouth of the well, defendant owes plaintiff nothing whatever. That the cost of production should be deducted from the value of the thing produced is clear under the provisions of article 501 of the Civil Code, which says:
“The fruits produced by the thing belong to its owner, although they may have been produced by the work and labor of a third person, * * * on the owner’s reimbursing such person his expenses.” Watterson v. Jetche, 7 Rob. (La.) 20; Gardere v. Blanton, 35 La. Ann. 811; Guarantee Trust Co. v. Drew, 107 La. 251, 31 South. 736; Ball Lumber Co. v. Simms, 121 La. 627, 46 South. 674, 18 L. R. A. (N. S.) 244; United States v. Homestake Mining Co., 117 Fed. 481, 54 C. C. A. 303.
In the former suit between the parties-wherein the lease'was canceled and annulled,, we found that:
“The plaintiff had been fortunate in this venture. She had sold land adjacent to that leased’ to the defendant for a very handsome price, all because of the search for oil and gas that the-value such search gives. The land of plaintiff, of little value heretofore, had been sold recently for $20,000. While, on the other hand, the defendant, in drilling, sunk over half that amount-There was a moral consideration; one which. *620 would influence some persons to show some recognition by not insisting upon the immediate execution of a legal right.”
So that, if defendant could be held to have gone into possession of plaintiff’s land in bad faith, technically, though in moral good faith, the plaintiff could not receive more than she would if she had been in possession when the well was drilled and gas was produced. Donaldson v. Hull, 7 Mart. N. S. (La.) 112; Succession of White, 51 La. Ann. 1703, 26 South. 428; New Orleans v. Gaines, 131 U. S. 191, 9 Sup. Ct. 745, 33 L. Ed. 99.
In estimating the loss sustained by plaintiff, or the profit made by defendant, whether we estimate a gas well as being worth $200 per annum, the highest estimate, or we fix upon the highest value of the gas at the mouth of the well, less the cost of production, as the measure of damages, we find that defendant has more than paid plaintiff for all the gas extracted and used by it from her land, in that she had received much more in material and, labor which has benefited her land than the value of the gas amounts to. Plaintiff is therefore entitled to nothing from defendant under her demand for damages.
Judgment affirmed.
PROVOSTY, J., takes no part.