No. 2295.
Second Circuit Appeal.

---

ABEL V. ROY v. CLIFTON NORMAND, ET AL.

---

(June 6, 1925, Opinion and Decree)

---

(*Syllabus by the Editor.*)

1. **Louisiana Digest—Timber—Par. 15.**
One who cuts timber on the land of another in good faith, believing it to be his own timber, is liable for the value of the timber at the stump and not as manufactured into lumber.

2. **Louisiana Digest—Tender—Par. 7.**
A tender relieves defendant from paying costs.

3. **Louisiana Digest—Pleading—Par. 110.**
A tender and admission in pleadings of more than is proven due will necessitate a judgment for the amount admitted although not proven.

Appeal from Fourteenth Judicial District Court of Louisiana, Parish of Avoyelles, Hon. S. A. Bordelon, Judge.

This is a suit for damages for cutting trees belonging to plaintiff.

There was judgment for plaintiff and defendant appealed.

Judgment reduced and affirmed.

Couvillon & Bordelon, of Marksville, attorneys for plaintiff, appellee.

N. L. Normand, of Marksville, attorney for defendants, appellants.

REYNOLDS, J. This is a suit against Clifton Norman, Clemile Normand and Lester Normand for $100.00 damages for cutting thirty-six trees belonging to plaintiff.

It is admitted by both plaintiff and defendants:

1. That the only issue involved in the case is the value of the timber cut by defendants on plaintiff's land.
2. That defendants cut from plaintiff's land thirty-six ash trees.
3. That defendants made plaintiff a legal tender of $36.00 before this suit was filed.

Under the pleadings and the above admissions the only question that this court is called on to determine is the value of the thirty-six ash trees.

OPINION

Plaintiff, Abel Roy, testified, pages 2, 3, 4 and 5:

"Q. Can you give the court an estimate of the value of those thirty-six trees?
"A. I consider that they are worth five dollars a tree, at least that's what they are worth to me.

\* \* \* \*

"Q. These are the measures of the trees?
"A. Yes, sir.
"Q. What are those other figures in here?
"A. That does not satisfy anything. The trees are worth five dollars to me.
"Q. You mean five dollars apiece?
"A. Yes, sir, they were worth five dollars apiece to me because I needed them for my own use.
"Q. You needed the trees for firewood?
"A. Yes, sir, I could have sold them but I wouldn't have for I needed them for my own use.

"Q. You wouldn't have sold those trees under five dollars apiece?

"A. No, sir, because I needed them.

"Q. And if you had the trees now you would not give them for five dollars apiece?

"A. No, sir, for I needed them for my own use.

\* \* \* \*

"Q. And you say you needed those trees for your personal use and that you would not take less than one hundred and eighty dollars for those trees?

"A. No, sir, I wouldn't take less than that.

"Q. You say that those trees are worth five dollars apiece to you?

"A. Yes, sir.

"Q. You estimate that, according to a tree five feet in diameter as well as one twelve inches in diameter, not making any difference as to length and width?

"A. Some were worth more than five dollars and some were not five dollars. I give five dollars as an average.

"Q. How much do you think trees on stumpage are worth per thousand feet, that is, if you had it and wanted to sell it and you didn't need it?

"A. Mr. Bordelon wanted to buy some around there and he wanted to pay six dollars.

"Q. You say Mr. Bordelon wanted to pay six dollars per thousand feet?

"A. Yes, sir.

"Q. Where did he want to buy that?

"A. Close to there.

\* \* \* \*

"Q. You have asked five dollars a tree, that is, an average of five dollars?

"A. Yes, sir.

\* \* \* \*

"Q. Those trees were worth to you five dollars a tree on an average?

"A. Yes, sir.

It will be observed that Mr. Roy only testified as to the value of the trees to him and did not state at any time their real commercial value. It is not contended that the trees possessed any value other than for lumber or firewood.

Clifton Normand testified, page 7:

"Q. Do you remember looking over the property of J. B. D. Roy which adjoins Abel Roy's property?

"A. Yes, sir.

"Q. After looking over J. B. D. Roy's property did you go to see J. B. D. Roy to buy this timber?

"A. Yes, sir.

"Q. Where did you see him?

"A. At his home.

\* \* \* \*

"Q. Did you offer to buy his timber on his land?

"A. Yes, sir, I asked him that.

"Q. Did you make him a price for his ash timber on the stumpage then?

"A. Yes, sir.

\* \* \* \*

"Q. What price did you offer him for the ash timber on stumpage?

"A. Three dollars and fifty cents or four dollars.

"Q. Did Mr. J. B. D. Roy agree to accept that price?

"A. Yes, sir.

"Q. Did you agree to pay him that much?

"A. Yes, sir.

"Q. J. B. D. Roy's property on which you bought the timber adjoins the property of Abel Roy on the west?

"A. J. B. D. Roy is on the west of Abel Roy.

"Q. They are adjoining each other?

"A. Yes, sir.

Page 8

"Q. In going over to cut J. B. D. Roy's timber that you had bought you made a mistake iln finding the line. You made a mistake in commencing to cut the timber?

"A. Yes, sir. What we cut on Abel Roy's property was left on J. B. D. Roy's property. Let's say we cut forty acres square and in other words the property we cut on Abel Roy is left over on J. B. D. Roy's tract.

"Q. Therefore it is purely a mistake on your part and no bad intention?

"A. Yes, sir, it was a mistake we made.

"Q. What do you pay for ash timber on the stump?

"A. Five or six dollars a thousand, that is scale measure.

"Q. There is a certain way of measuring timber on the stump?

"A. Yes, sir.

"Q. Did you get anybody to measure that timber for you? These thirty-six trees?

"A. Yes, sir.

"Q. Who did you get?

"A. Mr. L. H. Bordelon.

\* \* \* \*

"Q. He measured those same trees in question?

"A. Yes, sir.

Page 9

"Q. How much do you get for your lumber?

"A. An average of thirty dollars a thousand feet. That is without expense at all. That's what we have to take expenses out of.

"Q. How much expense is there per thousand feet?

"A. Between twenty and twenty-two dollars expense. That is for the logs, for the hauling and the sawing, then the hauling of the lumber to the cars. You make about eight dollars profit.

"Q. What you cut out of the logs, has that any value?

"A. Very little. We sell it for twenty-five or fifty cents a load.

"Q. That's good for firewood?

"A. Yes, sir.

"Q. That's waste, isn't it?

"A. Like I say, it has very little value; we sell it for twenty-five cents a load just to get it out of the way. In that amount of trees we cut there were about ten or fifteen loads at twenty-five cents a load.

Page 10

"Q. That made two dollars and fifty cents?

"A. Yes, sir.

"Q. A man who uses that ash wood for fuel, he wouldn't lose those slabs, would he?

"A. No, sir.

"Q. On the premises it is more valuable than twenty-five cents a load?

"A. No, sir; you can buy it for twenty-five cents a cord. I have over a hundred acres of nice trees that I would sell to you for twenty-five cents per cord.

\* \* \* \*

"Q. You said a while ago, in the expense of the trees that you included out of the twenty-two dollars the purchase price?

"A. Yes, sir, thirty dollars was the gross receipt.

L. H. Bordelon testified, page 11:

"Q. Did you measure those trees?

"A. Yes, sir.

"Q. Is there a certain positive way to measure timber like that when logs are not there any more?

"A. Yes, sir.

"Q. Did you scale those thirty-six trees?

"A. Yes, sir.

"Q. Have you got a statement there with you of that?

"A. Yes, sir. But I found thirty-four trees instead of thirty-six and that made fifty-three logs.

"Q. What did you find according to the rule of measurement? That is, how many thousand feet of lumber were there in the thirty-four trees?

"A. 3,397 feet, and I found four pieces that couldn't be used on the ground and that measured 168 feet.

"Q. You found the aggregate number of feet of timber cut from those thirty-four trees amounting to 3,397 feet and you found four pieces on the ground that measured 168 feet?

"A. Yes, sir.

"Q. What do you consider ash timber is worth per thousand feet on the stump at that place, what was it worth per thousand in April of last year?

"A. I didn't keep that in mind much. I wouldn't have paid more than six or seven dollars a thousand, that's all I could pay. Seven dollars is the most I would have paid."

Our Supreme Court held in the case of Schlater vs. Gay, 28 La. Ann. 340:

"The value of the timber at the time it was felled should determine the amount of loss sustained by the owners of it."

One who cuts timber on the land of another in good faith, believing it to be his own timber, is liable for the value of the timber at the stump and not as manufactured into lumber.

Bell & Brother Lumber Co. vs. Simms Lumber Co., 121 La. 627, 46 South. 674.

Sibille vs. Eastham, 136 La. 557, 67 South. 364.

In McGee vs. Louisiana Lumber Co., 123 La. 696, 49 South. 475, the court said:

"As defendants were not knowing and willful trespassers, we have no hesitation in coming to the conclusion that the damages should not be fixed in accordance with the rule laid down in the Guaranty Company vs. Drew Investment Company, 107 La. 251, 31 South. 736, and Wooden Ware Co. vs. U. S., 106 U. S. 432, 1 Sup. Ct. 398, 27 L. Ed. 230. In these cases the trespass was wanton and willful. The plaintiff is entitled to the value of the timber; nothing over its value."

We are convinced that a preponderance of the evidence sustains defendant's contention that the fair value of the timber at the stump at the time it was felled was not over eight dollars per thousand feet, and that the timber cut, including the 168 feet of cull timber, amounted to 3565 feet. At $8.00 per thousand feet the value of the timber cut by defendants on plaintiff's land was $28.52.

It is admitted in the pleadings that defendants made plaintiff a legal tender of $30.00.

This tender relieves defendant from the payment of any costs in the case. It also binds them to pay the plaintiff that amount.

It is therefore ordered, adjudged and decreed that the judgment of the lower court be amended by reducing the amount allowed plaintiff to $30.00, and accordingly it is now decreed that plaintiff, Abel V. Roy, do have and recover judgment against the defendants, Clifton Normand, Clemile Normand and Lester Normand in solido for the sum of thirty dollars with five per cent per annum interest thereon from April 24, 1924, until paid. All costs in both courts to be paid by plaintiff.