### WILLIAM KIRKMAN GRAY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5192. Promulgated June 21, 1945.

*Albert B. Koorie, Esq.*, for the petitioner.
*Homer J. Fisher, Esq.*, for the respondent.

#### OPINION.

BLACK, *Judge*: This proceeding involves the determination by the respondent against petitioner of a deficiency of $8,289.44 in income tax for the calendar year 1941, a small part of which is not contested.

The deficiency is the result of a minor adjustment of $1, not contested, and of an addition to income of $17,016.85 which the respondent, in a statement attached to the deficiency notice, explained as follows:

(a) It is held that the portion of your distributive share of the net income of the Estate of John G. Gray, which resulted from bonuses and royalties received on oil leases, does not constitute a part of the acquets and gains of the marital community, but coming from your separately owned property is taxable to you individually.

Petitioner, by appropriate assignments of error, contests this addition to income of $17,016.85 to the extent of $16,889.74.

The facts were stipulated as follows:

1. Prior to 1939 petitioner acquired by inheritance a one-third undivided interest in certain lands in Louisiana. Such lands were and are still operated

as a plantation, and sometime after acquisition and prior to 1939 oil was discovered thereon, and considerable oil income was realized thereafter.

2. Said lands were operated in the taxable year 1941, and prior thereto, as a joint venture under the name, Estate of John G. Gray, Lake Charles, Louisiana, in which petitioner had a one-third share and his sister, Matilda Geddings Gray, had a two-thirds share. Petitioner's sister, Matilda Geddings Gray, had active management of its operation under a general power of attorney from the petitioner. She filed for the year 1941 a return of income for said joint venture upon Form 1065 which is used for partnerships, syndicates, pools, joint ventures, etc.

3. During the taxable year 1941 the Estate of John G. Gray received income from the sale of cattle, horses and farm products; rentals from land; dividends; oil lease rentals, bonuses, royalties, and restored depletion.

4. During the taxable year 1941 the one-third of the net income of the Estate of John G. Gray reported on Form 1065 as petitioner's share was $45,383.52. Petitioner, William Kirkman Gray, and his wife, Mrs. Opal Hughes Gray, reported said amount as community income and divided it equally between them in separate income tax returns filed with the Collector of Internal Revenue for the District of Louisiana for the year 1941.

5. Said one-third of the net income of the Estate of John G. Gray was increased by the Commissioner to the amount of $45,637.74 by a depreciation adjustment which is not contested. Of said amount of $45,637.74 the Commissioner determined $11,858.26 to be community income of petitioner and his wife, and determined that the following items were the separate income of petitioner, William Kirkman Gray:

| | |
|---|---|
| Oil lease bonuses (⅓ of three bonuses received in 1941) | $35,150.00 |
| Royalties received in 1941 (⅓ of total from various oil leases) | 9,105.83 |
| Total | 44,255.83 |
| Less: 27½% depletion | 12,170.35 |
| Net | 32,085.48 |
| Depletion restored to income upon cancellation of two oil leases in 1941 (⅓ of the 27½% depletion taken upon receipt of two bonuses in 1939 and 1940, respectively) | 1,694.00 |
| Total separate income as determined by the Commissioner | 33,779.48 |

6. The Commissioner's determination resulted in the following allocation between the petitioner and his wife of the one-third distributive share of the income of the Estate of John G. Gray referred to hereinabove, with a resulting overassessment upon the income reported by petitioner's wife:

| | Husband | Wife |
|---|---|---|
| Separate income | $33,779.48 | |
| Community income | 5,929.13 | $5,929.13 |
| Total | 39,708.61 | 5,929.13 |
| Income as reported | 22,691.76 | 22,691.76 |
| Increase or decrease | $17,016.85 | ($16,762.63) |

7. Petitioner and his wife were married before the receipt of the income here in question.

8. Petitioner and his wife were married and residing together in the State of Louisiana; were citizens of, and domiciled therein, during the year in controversy and up to the present date.

9. Petitioner and his wife have no prenuptial or other agreement with respect to incomes of either or both received during the existence of the community.

10. The marital community of acquets and gains existed during the year in controversy and still does exist between petitioner and his wife.

11. The property from which the income here in question was received was the separate property of petitioner.

12. In their income tax returns for the year 1941 petitioner and his wife allocated the personal exemption of $1,500 and one dependency credit of $400.00 between them so that each claimed one-half of the total. In the deficiency determination the entire personal exemption of $1,500 and the credit for dependent of $400 have been allowed to the petitioner. In the event of a decision under Rule 50, the personal exemption may be so adjusted as to yield to petitioner and his wife the maximum tax benefit in computation of their aggregate tax liabilities.

The question for our determination is whether the income from bonuses, royalties, and restored depletion set out in paragraph 5 of the stipulation is the separate income of petitioner, or the community income of petitioner and his wife. The solution to such a question depends upon the state law. *Poe* v. *Seaborn*, 282 U. S. 101; *Commissioner* v. *Wilson*, 76 Fed. (2d) 766. In the instant proceeding we must therefore look to the law of the State of Louisiana. The pertinent statutes of Louisiana, which we think should be considered in deciding the issue we have here to decide, are printed in the margin.[1]

The parties have stipulated that there were no prenuptial or other agreements between petitioner and his wife with respect to the income of either or both; that the marital community of acquets and gains existed between the spouses; and that the property from which the income here in question was received was the separate property of petitioner.

---

[1] ART. 2334. Separate and common property of spouses.—The property of married persons is divided into separate and common property.

Separate property is that which either party brings into the marriage, or acquires during the marriage with separate funds, or by inheritance, or by donation made to him or her particularly.

   *      *      *      *      *      *      *

Common property is that which is acquired by the husband and wife during marriage, in any manner different from that above declared. * * *

   *      *      *      *      *      *      *

ART. 2399. Community of acquets and gains—Stipulation against required.—Every marriage contracted in this State, superinduces of right partnership or community of acquets or gains, if there be no stipulation to the contrary.

   *      *      *      *      *      *      *

ART. 2402. Property forming community—* * *. This partnership or community consists of the profits of all the effects of which the husband has the administration and enjoyment, either of right or in fact, of the produce of the reciprocal industry and labor of both husband and wife, and of the estate which they may acquire during the marriage, either by donations made jointly to them both, or by purchase, or in any other similar way, even although the purchase be only in the name of one of the two and not of both, because in that case the period of time when the purchase is made is alone attended to, and not the person who made the purchase. * * *

At the outset it may be noted that the income here in question is classified under three headings, namely, bonuses, royalties, and restored depletion on bonuses. As far as this proceeding is concerned, the governing principles are the same for all three classifications and it has been so regarded by the parties in their briefs. Cf. *Burnet* v. *Harmel*, 287 U. S. 103; *Welder* v. *Commissioner*, 148 Fed. (2d) 583. In the latter case the court said, "in the light of the authorities which clearly establish that the bonus is, and will be treated as advance royalty, and, therefore, income, and that the restored depletion must likewise be treated as income."

The facts which have been stipulated do not disclose whether the restored depletion in the year which we have before us had been taken as deductions in prior years by petitioner and his wife on the community property basis. We assume, however, that such was the fact and the Commissioner makes no contention to the contrary. We, therefore, make our decision on that basis.

In presenting his contention that the three items of bonuses, restored depletion, and royalties are the separate property of petitioner, respondent submits:

* * * The law is settled for similar income arising from oil lands situated in the adjacent community property state of Texas, that bonuses, royalties, and restored depletion of bonuses, are separate property if the lands are separate property. *Commissioner* v. *Wilson*, 76 F. (2d) 766; *Turbeville* v. *Commissioner*, 84 F. (2d) 307; *Dolores Crabb*, 41 B. T. A. 686 * * *. It is believed that the rules established under Texas law are persuasive of what the rules should be under Louisiana law.

We do not think the cases cited by respondent are applicable for the reason that, under the laws of Louisiana, the oil and gas not reduced to possession are not owned by the owner of the surface and hence are not, as in Texas, part of the corpus of the realty. The difference between the law of Texas and that of Louisiana in this respect was commented upon by the court in *Commissioner* v. *Wilson, supra,* one of the cases relied upon by respondent. In that case, presenting a question similar to the one here before this Court, the taxpayer was a resident of Texas and the land from which the royalties were derived was in Texas. The court, upon the basis of the Texas jurisprudence, sustained the decision of the Board of Tax Appeals holding the royalties to be separate income. Said the court:

* * * royalties, * * * are not paid for time but for oil and gas taken out, and represent an actual removal and disposition of the contents of the soil. In some states, as for instance Louisiana, the law looks to the fugaciousness of oil and gas and considers that they belong to no one until captured and confined, so that an oil and gas lease is only a contract for the use of the land for the purpose of capture, and what is paid is rent. In Texas oil and gas in place in the soil are by the established rules of property a part of the realty and capable of separate ownership and conveyance. [Citing authorities.] When sold in the

ground, the proceeds are the proceeds of sale of land and not the rents or revenues from it. The royalties under an ordinary oil lease are such proceeds and not rents. *State* v. *Hatcher*, 115 Tex. 332, 281 S. W. 192. By Texas law the lessee under the ordinary lease retaining a one-eighth royalty acquires a title to seven-eighths of the oil in the ground. When the oil is produced, the lessor owns, because he has never ceased to own, an undivided one-eighth.

It is true, of course, as respondent says in his brief, that what the court says in the *Wilson* case about the laws of Louisiana with respect to the nature of oil royalties was *dictum*, because the court was only deciding what the law of Texas was in this respect. However, we think that what the court said concerning the law of Louisiana with respect to oil royalties being rent is well supported by decisions of the Supreme Court of Louisiana. See *Roberson* v. *Pioneer Gas Co.*, 173 La. 313; 137 So. 46; *Board of Commissioners of the Caddo Levee District* v. *Pure Oil Co.*, 167 La. 801; 120 So. 801; *Shell Petroleum Corporation* v. *Calcasieu Real Estate & Oil Co.*, 185 La. 751; 170 So. 785.

In the *Shell Petroleum Corporation* case, the court said: "It is well settled that the paying of a royalty under a mineral lease, is the paying of rent." (Citing cases among which are the two above cited.)

In *Logan* v. *State Gravel Co.*, 158 La. 105, 109; 103 So. 526, the Supreme Court of Louisiana defined royalty as rental when it stated:

Hence our conclusion is that a mine or quarry, or land adapted to mining or quarrying may be leased for a certain portion of the produce of such mine or quarry, and the fact that said portion is called "royalty", instead of rent, is not of the least consequence. For "rent (by whatever name called) is a certain profit in money, provisions, chattels, or labor, issuing out of lands and tenements in retribution for the use." *King* v. *Harper*, 33 La. Ann. 496, citing Bouv. Law Dict. verbo, "Rent."

In the case of *Gulf Refining Co. of Louisiana* v. *Glassell*, 180 La. 190; 171 So. 846, 848, the Supreme Court of Louisiana reaffirmed that principle:

On several occasions this court has decided that the usual oil and gas lease, with a cash or royalty consideration, or both, such as presently before us, is a contract of letting and hiring within the meaning of the codal articles, and therefore does not create a servitude on the realty or a real right in the land. *Cooke* v. *Gulf Refining Co.*, 127 La. 592, 53 So. 874; *Rives* v. *Gulf Refining Co.*, 133 La. 178, 62 So. 623; *Cooke* v. *Gulf Refining Co.*, 135 La. 609, 65 So. 758; *Gulf Refining Co.* v. *Hayne*, 138 La. 555, 70 So. 509, L. R. A. 1916D, 1147, Ann. Cas. 1917D, 130; *Spence* v. *Lucas*, 138 La. 763, 70 So. 796; *Hennen's Digest*, vol. 1, 479, 480; *Allen* v. *Shreveport Mutual Bldg. Ass'n*, 183 La. 521, 525, 164 So. 328; and articles 2669, 2670, 2671, 2674, 2679 of the Revised Civil Code.

Respondent cites no Louisiana case to the contrary. In his argument he relies mainly on statements made in a book by Harriet Spiller Daggett, professor of law at Louisiana State University, entitled "Mineral Rights in Louisiana." If the statements from Daggett's book quoted by respondent in his brief be deemed contrary to the holdings

of the Supreme Court of Louisiana, then we feel that we must follow the decisions of the Supreme Court of Louisiana. See *Erie R. Co.* v. *Tompkins*, 304 U. S. 64, at page 78, wherein it is said: "Except in matters governed by the Federal constitution or by acts of congress the law to be applied in any case is the law of the state." Naturally the best interpreter of the laws of Louisiana is the Supreme Court of that state. And it seems clear to us that the Supreme Court decisions of Louisiana hold, without exception, that oil royalties received under an oil lease are rents.

It should be noted that the parties have stipulated in paragraph 3 of the stipulation that the estate of Gray received rentals from land and oil lease rentals (meaning delay rentals) in addition to the bonuses, royalties, and restored depletion. The respondent concedes that petitioner's share of the "rentals from land" and the "oil lease rentals" was community income. See *Peters* v. *Klein*, 161 La. 664; 109 So. 345, in which the court said:

All collections of rents or revenues from property under the administration of a married man, during the existence of the community, belong to the community. R. C. C. art. 2402; *Succession of Goll*, 156 La. 919, 101 So. 263.

Therefore it follows that all rents collected by defendant from his separate property during the marriage were community funds, regardless of the fact that these revenues were kept by him in a separate account.

The respondent, however, as has already been stated, contends that the "bonuses, royalties, and restored depletion" are in a different category from what the court had in mind in *Peters* v. *Klein*, in that they can not be classed as rents. That contention under the authorities above cited is not sustained. On this issue we hold for petitioner.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

---

OPPER, *J.*, dissenting: This case seems to me to present another aggravated example of the sterility of attempts[1] to mate peculiar local property law with a system of uniform national taxation, and particularly of the impossibility of reconciling the antique law of community property with such modern concepts as those exemplified by *Helvering* v. *Clifford*, 309 U. S. 331. See 1 Paul, Federal Estate and Gift Taxation, sec. 1.09; Ray, "Proposed Changes in Federal Taxation of Community Property," 30 Calif. Law Review 397, 407; Mr. Justice Douglas, dissenting in *Commissioner* v. *Harmon*, 323 U. S. 44, 49.

It would be bad enough if the property earning this income were community property, considering that "It has been said, with respect

---

[1] See e. g., *Estate of James F. Waters*, 3 T. C. 407; *Stella Wheeler Bishop*, 4 T. C. 591; *George K. Brennen*, 4 T. C. 1260.

to Louisiana, that 'adherence to the theory of the wife's vested interest amounts to little more than lip-service, because neither the wife nor her creditors can exercise any control over the community property until dissolution of the community.' " Paul, op. cit., note 72.

But here the income was produced by the husband's separate property, with respect to which even in community property states there is no claim of ownership by the wife. The domination and control by the husband, extending even to the power to sell the property unconditionally, is thus infinitely more complete than in *Helvering* v. *Clifford*, and a result which fails to tax him on the income seems to me fundamentally irreconcilable with the principle of that case. It certainly furnishes no satisfactory basis for arriving at a different result with respect to oil income in Louisiana from that obtaining in the neighboring State of Texas. *Crabb* v. *Commissioner* (C. C. A., 5th Cir.), 119 Fed. (2d) 772.

ARNOLD, *J.*, agrees with this dissent.