ALEXANDER DENNISTOUN and another v. JOHN S. WALTON.

A lease made by the riparian proprietor of a *batture* lying between the public road and the river in front of his land, cannot be annulled by a lessee who has not been disturbed in the enjoyment of the property, on the ground that the premises leased are a portion of the bank of the river, the use of which is free and not susceptible of being leased. The space between the public road and the *levée* is private property, to the exclusive use of which the owner is entitled ; and he may use the part which extends from the *levée* to the river, subject to the regulations of the municipal authority, provided he does not prevent the use of it by others ; and he may confer upon a lessee the same right. C. C. 446.

The Civil Code, art. 2652, recognizes the validity of the lease of another's property, by declaring that he who leases the property of another warrants the enjoyment of it against the claim of the owner. The principal obligation of the lessor is, to maintain his lessee in the quiet enjoyment of the thing, and, while he is undisturbed, he cannot gainsay the title of his lessor ; the object of the contract being the use of the thing.

APPEAL from the District Court of the First District, *Buchanan*, J.

*E. Briggs*, for the appellants. The 446th article of the Civil Code, classes amongst things for common use, the banks of navigable rivers, *reserving* the right of property to the front proprietor. The 448th article declares, that on the river Mississippi, the levée shall form the banks. The 661st article characterizes this right as a servitude. The 745th article declares, that estates subjected to servitude, may be further subjected to others, provided that the second does not interfere with the first. The 749th article declares, that donations of this kind are to be construed strictly, in favor of the donor and against the donee ; which doctrine is supported by Toullier, vol. 3, p. 420, No. 654.

The right then ceded to the public, is a servitude, and the language of the Code, in art. 446, points out the sort of right which it intended to vest—such temporary appropriations of another's land to one's own use, as the nature of river navigation, or the use of what is strictly public, might make absolutely necessary. It

leaves the ownership charged with this servitude in the party, who would, but for this burden, be absolute owner of the soil; and we contend, that it leaves him empowered to do and exercise all acts of ownership not inconsistent with the fair and free exercise of the right reserved. If this doctrine be correct, it certainly gives the owner the right to delegate to others the right which he himself possesses; and it would seem to follow, as a necessary consequence, that this delegation of his rights may form the basis of a contract. The lessee takes the property subject to the servitude, and it is for him to see, that in exercising the privileges the lease confers upon him, he does no act whereby the servitude given by the Code is impaired, or its free exercise interfered with. If he obstruct the enjoyment of this privilege, his acts may be abated; and the possibility of such abuse of his power is no argument against its existence. The same objection could be raised against the power of the proprietor over whose land a right of way exists; or, in fact, in the case of any servitude; and there is no distinction made by the Code, nor can any exist, in reason, between a privilege of this kind, given by law, and one that has been created by convention. The power given, or presumed to be given, by the 661st article to the police jury, cannot affect the nature of this right; it can neither qualify, extend, nor abridge it. Such as the Code gave, the privilege must exist, though the police jury may declare perhaps, as they have done in Jefferson, the limits over which this privilege shall extend; and the action of this body can in no way affect the principles for which we are contending.

This question is not open to discussion. The Supreme Court, in the two cases of *Chase* v. *Turner*, (10 La. 20,) and *Nichols* v. *Byrne*, (11 La. 173,) have expressly admitted the existence of a right to lease. In the first case, batture with other land, formed the subject of the contract; in the latter, it was batture land alone; and the decision of the court in both cases, sustained the landlord's claim under circumstances far different from those which characterize the present case. There, the object for which the land was taken, was defeated by the exercise of legal power; here, there has been no eviction,—no trouble of any kind. A quantity of wood was seized upon the land, more than sufficient to satisfy the claim; and it was not until, by the leniency of the owners of the soil, the rent had fallen in arrear, that any objection was urged to the power to lease.

The more recent decision of this court, does not affect our position. It merely decided, that permanent establishments, which not only *interfered* with the exercise of a servitude, but rendered its *enjoyment utterly impracticable*, could not be maintained; and to the soundness of this doctrine we cheerfully subscribe.

But we contend, that if the reservation of ownership confers upon the riparian proprietor the slightest possible right, that right can be conferred upon another ; and that it matters not how small, or how much encumbered the exercise of that right may be, provided the lessee elects to take it at a price,—he becomes lessee, *cum onere*, but not one tittle the less accountable to the party from whom he takes the right, because he cannot exercise dominion in a way which his landlord never was supposed to guaranty that he should.

Under the decision of *Tippet* v. *Jett*, (10 La. 362,) it is not in the power of this lessee to contest the right to lease. In the quiet and undisturbed possession of all he bargained for, he cannot now dispute a right which, in accepting the lease, he formally acknowledged.

*Trudeau,* on the same side.

*Peyton* and *J. W. Smith,* for the defendant. The property was *batture*, and not susceptible of being leased. The ordinances of the police jury of Jefferson, not having been offered in evidence, could not be legally noticed by the court.

*J. C. Clarke,* on the same side.

BULLARD, J. This controversy commenced by a seizure for rent. The defendant makes opposition, claims the nullity of the lease on the ground that the property leased is a batture,[*] and, in reconvention, prays for the restitution of rents already paid by mistake. The court declared the lease null, and the plaintiffs have appealed.

The lease is of the batture lying between the public road and the river, in front of the plaintiffs' tract of land in the parish of Jefferson, opposite to Livaudais, having four acres of front, to be used by the lessee as a coal and wood yard, at forty dollars per month. The defendant does not pretend that he has been disturbed in the enjoyment of the property for the purpose for which it was leased ; but he contends, that the property is a portion of the bank of the river, the use of which is public, and that, consequently, it is not susceptible of being leased for private use.

That the *use* of the banks of navigable rivers is public, although the soil belongs to the riparian proprietor, and that this use is regulated by municipal authority, is well settled. It follows,

---

[*] The plaintiffs had also prayed that the lease might be annulled,

that the owner cannot himself enjoy the bank in such a way as to prevent its common enjoyment by all, as regulated by article 446 of the Civil Code—that is to say, to bring vessels to land, to make them fast to trees, to unload, to deposit goods, to dry nets, and the like. But, in the present case, there is a part of which the public has not necessarily the use. The lot leased extends from the public road to the water's edge. Whatever space there is between the levée and the road is private property, and the owner is entitled to the exclusive use of it. With respect to the part which extends from the levée to the river, the owner may use it, provided he does not prevent the use of it by others, as regulated by the article of the Code above referred to, and in conformity to the police regulations.

Our learned brother of the District Court assumes, that the police regulations of the parish of Jefferson, are a part of the law of the land, and that the court is bound to notice them without proof of their enactment or promulgation, and that by one of their regulations, a space of sixty feet only from the water's edge, has been reserved for the use of the public. If this be so, then the parties contracted with a view to such reservation, and, if there be more than sixty feet, the lease is clearly valid. Be this as it may, the owner has clearly a right to enjoy his property in a modified form, provided he conforms to the regulations of the police jury, and he may confer upon a lessee the same right.

In *Chase* v. *Turner*, we held, that it was not a legal excuse for non-payment of rent, that by a city ordinance the lessee had been prevented from using the batture in front for cutting up boats and rafts. 10 La. 19.

The case of *Nichols* v. *Byrne* is analogous to the present. The plaintiff had leased a piece of land, fronting on the river, for the purpose of cutting up fire-wood, &c., but was soon afterwards notified by the wharfinger to desist from using the leased premises for that purpose, in virtue of a city ordinance, in consequence of which the lessee complained that he had been dispossessed. He claimed damages, and that his notes given for the rent should be cancelled. The court held, that the city regulations extended to all lessees and landholders, and that if the ordinance was unlawful

Dennistoun and another v. Walton.

the lessee could protect himself; if lawful, he had no right to complain.   11 La. 172.

In the present case, it is clear, that the whole of the premises is not devoted to the public use, and the lessee does not complain of having been disturbed.   He stands in the place of the owner, as to the enjoyment of the property in a manner not inconsistent with the police regulations of the parish.   The Code seems to recognize the validity of the lease, even of another's property, by declaring, that he who lets out the property of another warrants the enjoyment of it against the claim of the owner.   Article 2652. Pothier, Contrat de Louage, No. 20.   Oblig. 133.   The principal obligation of the lessor is to maintain his lessee in the quiet enjoyment of the thing, and while he is undisturbed, he cannot gainsay the title of his lessor.   The object of the contract is the use of the thing.   *Tippet* v. *Jett*, 10 La. 359.

It is, therefore, ordered, that the judgment of the District Court be reversed, and that the plaintiffs recover of the defendant one thousand and forty dollars, with interest at the rate of five per cent from the 23d December, 1843, and costs in both courts ; and it is further adjudged, that the lease be annulled.*

---

* The counsel for the defendant, in an application for a re-hearing, urged, that the court erred in supposing that the cases of *Chase* v. *Turner*, (10 La. 19,) and of *Nicholls et al.* v. *Byrne*, (11 La. 172,) are analogous to the present.   In the case of *Chase* v. *Turner*, the property leased is described as " a parcel of land, situated on both sides of New Levée-street, in Fauxbourg Delord, and running to the Mississippi," &c.   In that case, a large part of the property, not being the bank of the river, was susceptible of private use, and could be the subject of lease.   In the case of *Nicholls et al.* v. *Byrne*, the statement of facts by the reporter is not clear, but the court in its opinion declares the facts to be similar to those of *Turner* v. *Chase*, and the law to be the same.   By an examination of the original papers on file in the parish court, it will be found, that the leased premises are described, as a tract of land lying on the Mississippi, having a front of one hundred feet, and of an irregular depth ; and there are no measurements given in the record to ascertain the rear boundary.   Then it cannot be disputed, that a material difference in facts distinguished the present from the cases cited.   In the present, the leased premises are confined to the bank of the river.   In the cases cited, the leases comprise the bank of the river, in connexion with land in the rear, that was susceptible of private use.

The court also erred, in laying any stress on the principle, decided in the case of *Tippet* v *Jett*, (10 La. 362,) viz. that a tenant cannot dispute his landlord's title ;

---

and on the principle that the lease of another's property may be valid. Here we do not dispute the landlords' title. On the contrary, we admit them to be the riparian proprietors ; but contend, that the property is put to a use of which it is not susceptible—that being the bank of the river, it cannot be made the subject of a lease—maintaining the principle that the levée, the bank, and the bed of the Mississippi, are by law dedicated to public use. Vide Civil Code, arts. 446, 448. *Pully & Erwin* v. *Municipality, No.* 2, 18 La. 278. *Morgan* v. *Livingston,* 6 Mart. 216–229. *Shepherd* v. *Third Municipality of New Orleans,* 6 Rob. 349. The use of the word " *batture,*" in the lease, as descriptive of the property, is conclusive as to the fact, that the premises leased are the bank of the river, the term *batture* being only applicable to alluvion that is washed or beaten by the water, which must, therefore, be land beyond the levée, and exposed to the action of the stream. Vide *Morgan* v. *Livingston,* quoted above. Whenever alluvion is protected by the levée from the water, it ceases to be *batture.*

*Re-hearing refused.*