(70 South. 796)

No. 21486.

SPENCE et al. v. LUCAS et al.

(Nov. 15, 1915. On Application for Rehearing, Feb. 7, 1916.)

*(Syllabus by the Court.)*

1. LANDLORD AND TENANT &#9685;&#10132;50 — LEASE — VALIDITY—OWNERSHIP.

Ownership is not essential to make a valid lease.

[Ed. Note.—For other cases, see Landlord and Tenant, Cent. Dig. §§ 120, 121; Dec. Dig. &#9685;&#10132; 50.]

2. MINES AND MINERALS &#9685;&#10132;56 — MINERAL "LEASE"—CONSTRUCTION.

A mineral lease which partakes of the nature of a lease as well as that of a sale, and which does not appear to have been provided for by the laws of the state, will be considered as a lease; and the laws with reference to leases will be applied to such mineral lease in so far as they may be applied.

[Ed. Note.—For other cases, see Mines and Minerals, Cent. Dig. § 166; Dec. Dig. &#9685;&#10132;56.

For other definitions, see Words and Phrases, First and Second Series, Lease.]

3. TENANCY IN COMMON &#9685;&#10132;43—LEASE BY CO-OWNER—EFFECT.

A lease of the whole property made by a co-owner, duly registered, bears upon the property sold in the hands of a transferee.

[Ed. Note.—For other cases, see Tenancy in Common, Cent. Dig. §§ 130–132, 136, 137; Dec. Dig. &#9685;&#10132;43.]

4. PARTITION &#9685;&#10132;111 — PROCEEDS OF SALE — LEASE BY CO-OWNER.

But in a judicial partition of the property by licitation the lease ceases to exist as to the land; and it cannot be referred to the proceeds of the sale.

[Ed. Note.—For other cases, see Partition, Cent. Dig. §§ 401–418; Dec. Dig. &#9685;&#10132;111.]

Appeal from Eleventh Judicial District Court, Parish of Red River; W. T. Cunningham, Judge.

Action by M. C. Spence and others against Mose Lucas and others, wherein J. C. Trees and others intervene. From judgment for plaintiffs, the interveners not named appeal. Affirmed.

J. C. Pugh & Son, of Shreveport, and Nettles & O'Quinn, of Coushatta, for appellants. Elias Goldstein, of Shreveport, and Stephens & Raphiel, of Coushatta, for appellees. Thigpen & Herold, of Shreveport, amici curiæ, on application for rehearing.

SOMMERVILLE, J. Wilson Lucas, the father of defendants, was a colored man who owned three several parcels of land, aggregating about 237 acres, in Red River parish. At his death his widow, Silliman Lucas, became the owner of an undivided one-half of these pieces of land; and their four children, Sallie Blake, Mary Knight, Mose Lucas, and Sophie Holmes, inherited the other one-half of said property. Sophie Holmes is an interdict, and she was made party to this suit through a curator ad hoc appointed to represent her.

The property is described as the east half of southwest quarter and southwest quarter of southwest quarter, section 3, the northwest quarter of southeast quarter, section 4, and the fractional northeast quarter of northwest quarter, section 9, all in township 13, range 10.

A partition of the property is sought by plaintiffs, who have bought three-fourths of the property from the widow and two of the heirs. Before the sale the widow had enter-

ed into a mineral lease with the interveners in the case; and the contest is between the purchasers of an undivided three-fourths of the property and the lessees.

February 5, 1913, Silliman Lucas, the widow, and owner of one-half of the property in indivision, granted, bargained. sold, and conveyed unto R. W. Davis, one of the interveners herein, "all of the oil and gas in and under the following described land, together with the right of ingress and egress at all times for the purpose of drilling, mining, and operating for gas, oil, or water, and conduct all operations, to erect storage tanks and other necessary structures, and to lay all pipes necessary for the production, mining, and transportation of oil, gas, and water, with the right to use sufficient water, gas, or oil to operate said property," for the sum of $35.50 cash in hand paid, with the reservation by Silliman Lucas of "the equal of one-eighth of all oil produced and saved upon said premises, to be delivered in any pipe line to which well or wells may be connected." Then follows the description of the land as given above.

"To have and to hold the above-described premises unto the party of the second part [Davis] his heirs and assigns on the following conditions: In case operations for either the drilling of a well for oil or gas is not commenced or prosecuted with due diligence within twelve months from this date, then this grant shall immediately become null and void as to both parties: Provided, that the second party may prevent such forfeiture from quarter to quarter for seven years, by paying. to the first party the sum of eight dollars and eighty-eight cents per quarter until such well is commenced," etc.    "In case the party of the second part should bore or discover either oil or gas, then in that event this grant, incumbrance, or conveyance shall be in full force and effect for twenty-five years from the time of the discovery of said product, and as much longer as oil or gas may be produced in paying quantities thereon. This grant is not intended as a mere franchise, but is intended as a conveyance of the property above described for the purpose herein mentioned, and it is so understood by both parties to this agreement. It is understood between the parties to this agreement that all conditions between the parties hereunto selling shall extend to their heirs, executors, administrators and assigns."

This act was recorded June 27, 1913, and reinscribed June 6, 1914.

The land was undeveloped at the time this suit was tried; and operations for drilling a well for oil or gas had not been commenced and prosecuted within 12 months after the date of the agreement. But this is not a suit to annul and avoid the contract on that ground. It is a partition suit by the vendees, of Silliman Lucas against two of the heirs of Wilson Lucas, in which Davis, the lessee under the mineral lease, and his vendees, are interveners.

May 6, 1914, Silliman Lucas and two of her children, Sallie Blake and Mary Knight, sold their undivided three-fourths interest in the land to M. C. Spence, Albert A. Autrey, and August Goldstein, the plaintiffs in this suit, without reference, apparently, to the recorded contract of lease made by Silliman Lucas to R. W. Davis.

June 5, 1914, Davis and the Atlas Oil Company had a partition of their oil interests in Caddo and Red River parishes, in this state,. wherein it is declared, in the act of partition:

"That the Atlas Oil Company owns in indivision an undivided eleven-twentieths interest and the said R. W. Davis owns an undivided nine-twentieths interest in the following gas and oil contracts or mineral leases, to wit: * * * A mineral oil and gas lease from Silliman Lucas, dated February 5, 1913, recorded in Book C of Liens and Privileges, p. 456, on June 27, 1913, in the records of Red River parish for the" lands before described herein, and in which "R. W. Davis accepts as his full interest of the lease hereinabove designated as the Silliman Lucas lease the south nine-twentieths of the northeast quarter of the southwest quarter of section 3, the north two-fifths of the southeast quarter of the southeast quarter of section 4, the south nine-twentieths of northwest quarter of southeast quarter of section 4, the south nine-twentieths of the northeast quarter of northwest quarter of section 9, township 13, range 10.

"And the said Atlas Oil Company herein conveys to the said R. W. Davis all of its rights, titles, and interest to the above-described property known as the Silliman Lucas land, and accepts the remainder as its full share and interest therein. * * * This partition is made with the understanding that neither party hereto warrants the title to any of the property here-

in above described or becomes liable in any manner to make restitution."

This act undertook to make a partition in kind of the property involved in this suit. Davis, as owner in indivision of nine-twentieths of the lease, took the several parts of the property mentioned in the act, and the Atlas Oil Company took the remainder. This act of partition was made without warranty.

January 30, 1915, the Atlas Oil Company transferred, sold, conveyed, and delivered to M. L. Benedum, J. C. Trees, and H. J. Parker, among other property, the following described "leases on land" situated in Red River parish, La.:

"The several oil and gas leases and portions of oil and gas leases acquired by this vendor in partition with R. W. Davis," etc.

This act included all of the oil and gas leases referred to in the act of partition between Davis and the Atlas Oil Company. This sale was made without warranty.

February 24, 1915, Benedum, Trees, and Parker sold and delivered to the Standard Oil Company of Louisiana the undivided fifty-five one-hundredths interest in and to certain property described in the act, including "the several oil and gas leases and portions of oil and gas leases acquired by the Atlas Oil Company in partition with R. W. Davis, as shown by act of partition filed and recorded June 8, 1914," without warranty.

April 2, 1915, R. W. Davis, M. L. Benedum, J. C. Trees, H. J. Parker, and the Standard Oil Company intervened in this suit of partition between plaintiffs and two of the heirs of Wilson Lucas.

Both parties allege that plaintiffs filed a supplemental and amended petition, which is not found in the record; but, in plaintiffs' brief it is stated that the prayer of said supplemental petition is as follows:

"That after all legal delays and due proceedings had, there be judgment as prayed for in the original petition and ordering that the sale be made of the property free from any rights of the said so-called lessees, and that any right

or interest that the said so-called lessees may have be referred to direct personal action against their original lessors, or the proceeds of the sale; that the right of the plaintiffs to assert in any event the original invalidity of the lease, and, in the alternative, its expiration, be fully reserved."

Plaintiffs in intervention set up the transfers before enumerated, which go to show that Davis is the owner of forty-five one-hundredths and the Standard Oil Company is the owner of fifty-five one-hundredths of said oil and gas lease.

They allege that plaintiffs filed a supplemental petition in which is set out the "contract of lease from Silliman Lucas to your petitioner R. W. Davis, and the assignment thereof of an interest to the Atlas Oil Company." And they ask for judgment "recognizing their oil and gas lease on an undivided half interest in said property," and that, if a partition thereof should be made by licitation, and that the lease in favor of interveners cannot be recognized as bearing on an undivided half interest in said property, then and in that event their right of lease be recognized, and the same be appraised separately, and from the proceeds of the sale from the half interest in said property they be paid by preference from the purchase price thereof over the alleged owners of said property.

The petition of intervention was ordered to stand as an answer to plaintiffs' supplemental petition.

Thus two separate causes of actions by plaintiffs have been combined in one suit against two sets of defendants. The partition suit is against the co-owners with plaintiffs, and the other, asking that the sale of the property be made free from any rights of the lessees, is against the lessees.

The case was tried on an agreed statement of facts, which says that the three plaintiffs in this suit are the owners of three-fourths of the property involved; that they acquired a one-half interest from Silli-

man Lucas, and one-fourth from Sallie Blake and Mary Knight; that Mose Lucas and the interdict, Sophie Holmes, are the owners of the other one-fourth; that "Silliman Lucas executed in favor of intervener R. W. Davis a mineral lease upon her then interest in the property above described, which interest was at that time an undivided one-half interest therein." The several acts of transfer before referred to in the statement of the case were also admitted to have been executed and recorded; further, "that the aforesaid property is indivisible in kind, and that it is necessary that the property be sold at public sale to effect a partition; that no wells have been drilled on the aforesaid property."

There was judgment in favor of plaintiffs and against defendants and interveners recognizing plaintiffs and the original defendants to be the owners of the property in indivision, and ordering a partition thereof by licitation at public auction, and that the property be sold and go to the purchaser free of all mortgages, liens, and privileges of whatever nature or kind, including the mineral leases thereon, and claims to any mineral rights.

Defendants and the intervener Trees have not appealed. The judgment is final as to them. The other interveners have appealed.

The question to be decided is whether the mineral lease made by Silliman Lucas, the one-time owner of the undivided one-half of the property involved, with R. W. Davis, which lease was duly recorded, bears upon that undivided one-half interest which was subsequently transferred to the three plaintiffs by Silliman Lucas or not.

Interveners do not make claim to or upon the undivided one-eighth interest inherited by each of the four heirs of Wilson Lucas, two-eighths of which are now owned by plaintiffs, and the other two-eighths are owned by the two defendants, heirs of Wilson Lucas.

138 LA.—25

[1] When Silliman Lucas entered into the contract of lease with R. W. Davis, she was the owner, in indivision, with her four children, of the property leased. Nevertheless she leased the whole property to Davis. The lease was valid; for ownership is not essential to make a valid contract of lease. Article 2682 provides that:

"He who lets out the property of another, warrants the enjoyment of it against the claim of the owner."

And leases have been enforced against lessees where the lessor was not the owner of the real property leased. Chase v. Turner, 10 La. 19; Tippet v. Jett, 10 La. 359; Nicholls v. Byrne, 11 La. 170; Dennistoun v. Walton, 8 Rob. 211; Sientes v. Odier, 17 La. Ann. 153.

Silliman Lucas, the lessor, and her transferees in title, with notice of the existence of the lease, could not sue to annul the lease on the ground that she was not the owner in whole or in part of the property at the date of the lease. And the interveners, the lessees, would not be permitted to sue them for the dissolution of the lease if they were not disturbed in their possession.

Article 2015, C. C., provides:

"Not only servitudes, but leases and all other rights, which the owner had imposed on his land before the alienation of the soil, form real obligations which accompany it in the hands of the person who acquires it, although he had made no stipulation on the subject, or they be not mentioned in the act of transfer. The purchaser may, if the circumstances permit it, have relief against the seller for concealment of such charges; but the law establishes the rule that no one can transfer a greater right than he himself has, except where the neglect of some formality required by law has subjected the owner of the real incumbrance to a loss of his right, in favor of a creditor or bona fide purchaser."

Silliman Lucas and her four children were the owners of the property involved, together with any and all minerals which might be in existence below the surface of the soil. In this instance it is supposed that oil and gas are beneath the surface; and in the con-

tract of lease made by Silliman Lucas with Davis the latter was given the right to enter upon the land and to exploit it for oil and gas. Silliman Lucas and Davis were competent to enter into such a contract, and to bind themselves in the terms therein contained. Said contract was a real obligation imposed upon the land, which was duly recorded; and it accompanied the land into the hands of the plaintiffs in this suit when they acquired it.

[2] Interveners are not asking for more than the recognition of their lease. · They are not claiming that the oil and gas under the surface of the soil was sold to them. They adopt the expression of opinion by the court in the cases of Cooke v. Gulf Refining Co., 127 La. 592, 53 South. 874, Rives v. Gulf Refining Co., 133 La. 178, 62 South. 623, and Cooke v. Gulf Refining Co., 135 La. 609, 65 South. 758, to the effect that mineral leases will be construed as leases, and not sales, and that the law with reference to leases will be applied thereto in so far as they may be.

All parties, as shown by their pleadings, stand upon the contract as one of lease.

Until the Legislature shall have passed laws specially applicable to the industry of mining, which is a new one in this state, the parties engaged in those pursuits and the courts of the state will adhere to the jurisprudence on the subject, and treat mineral contracts as leases.

[3] The Legislature has provided for the mortgaging and bonding of mineral contracts and leases. Act 232 of 1910, p. 393. Silliman Lucas was the owner of an undivided one-half of the property leased, and she had the free disposal of that interest. C. C. 484. As the owner of the soil, she owned all that was directly above and under it. C. C. 505. If oil and gas or other minerals are below the soil, she might construct all manner of works above and below, digging or boring as deep as she deemed convenient, and draw all the benefits that might accrue therefrom, under such modifications as may result from the laws and regulations concerning mines and the laws and regulations of the police. And she had the right to lease such right in and to her undivided one-half of the property to interveners. C. C. 505. She has done this.

When Silliman Lucas subsequently sold her undivided interest in the lands to plaintiffs, burdened with this lease, they took both the lands and the lease, and stand as lessors to interveners. · She and they cannot be heard to attack the lease on the ground that she was not the sole owner of the property leased at the date of the lease.

The lease was valid at that time, and it is valid now as to the parties thereto and their assigns.

Interveners' demand for recognition of the lease as bearing upon the undivided one-half of the property owned by Silliman Lucas at this time is recognized. But the court will not pass upon the effect of the lease between the parties after the partition sale.

When interveners accepted the lease from Silliman Lucas there was coupled with it the condition that the property was subject to partition, and, on that event happening, that the lease would attach only to that portion or portions of the ground falling to the lot of Silliman Lucas.

[4] But plaintiffs acquired one-fourth of the leased property from Sallie Blake and Mary Knight, who were not parties to the lease made by their mother; and they are suing as owners of that interest as well as their one-half interest, for a partition of the property by licitation. All parties have agreed that the property is indivisible in kind, and a sale thereof is necessary; so no portion or portions of the thing leased

·can fall to the lot of plaintiffs in a partition of the property in kind.

The rule is settled that acts entered into by one of the coproprietors on an undivided object are subordinate to the result of a partition. And, when the property leased is sold to effect the partition, the title will pass free of the lease.

Interveners ask that in the event of a sale by licitation their lease be appraised, and that from the proceeds of the sale from the half interest in the property they be paid by preference.

Art. 1338, C. C., makes provision for mortgages, liens, and privileges against a co-owner in judicial partitions, and transfers them to the proceeds of the sale. But there is no like provision in the Code or the statutes with reference to leases made by an owner in indivision. And, as "privileges can be claimed only for those debts to which it is expressly granted in this code" (C. C. 3185), the relief asked for by interveners cannot be granted.

Interveners took the lease from Silliman Lucas knowing that the property might be judicially partitioned by licitation, and that the lease would fail if the property was sold to a third person. In that event the contingency will have happened; the lease will become impossible of execution; and it will cease to exist as to the land.

Judgment affirmed.

## On Application for Rehearing.

PER CURIAM. Nothing in the opinion in this case contained is to be understood as precluding a lessee from requiring that the relative rights of the lessor or lessee in the lessor's interest in the land be appraised separately, and that the price of the partition sale be apportioned between them on the basis of this appraisement. On that point the court expresses no opinion.

Rehearing refused.