162 So. 761

**WELLAN v. WEISS et al.**

No. 33275.

July 1, 1935.

Julius B. Nachman and Isaac Wahlder, both of Alexandria, for appellant.

Hawthorn, Stafford & Pitts, of Alexandria, for appellees.

ODOM, Justice.

Plaintiff appealed from a judgment dismissing his suit on exception of no cause of action. We learn from his petition that by written contract dated September 30, 1930, he leased from defendants a brick store building for a term of four years and eight months at a monthly rental of $200. The building was leased for mercantile purposes and is still occupied and being used by plaintiff for that purpose. The plaintiff alleged in his petition that he was entitled to a diminution of the rent after December, 1932, under article 2697 of the Revised Civil Code, which reads as follows:

"If, during the lease, the thing be totally destroyed by an unforeseen event, or if it be taken for a purpose of public utility, the lease is at an end. If it be only destroyed in part, the lessee may either demand a diminution of the price, or a revocation of the lease. In neither case has he any claim of damages."

The conditions and circumstances under which plaintiff alleges that he is entitled to a diminution of the rent are as follows:

The building is in the city of Alexandria and is located at the corner of Murray and Second streets, which intersect at right angles. The building fronts on Second street and runs back towards Red river. There is an entrance into the building and also fifty feet of glass display windows on the Murray street side, and at the time the lease was entered into there was considerable parking space for automobiles on the Murray street side and at the rear of the building, this parking space not being part of the premises leased. Murray street runs back to the traffic bridge over Red river and at the time the lease was made the surface of the street along the side of the store was practically on a level with the lot on which the store is built, so that both pedes-

trians and those riding in vehicles had full view of the display windows. There is a sidewalk along the Murray street side of the building, from which pedestrians may still enter the building.

These conditions continued until December, 1932, when the Red River, Atchafalaya and Boeuf River Levee Board, in conjunction with the federal government, found it necessary, in order to protect the city of Alexandria from overflow, to reconstruct and build the levee higher. In doing so, the levee was moved back from the river a distance of seventy feet, which brought it that much nearer the rear end of the store, and this destroyed the parking space formerly used by owners of vehicles.

Murray street, as stated, intersects Second street at right angles and is the approach to the traffic bridge over Red river. The top of the levee and the bridge are considerably higher than the lot on which the store is built and in order to pass over the levee to the bridge, there is a ramp or an incline on Murray street which originally began some distance back from Second street, on which the store fronts, but the building of the levee higher necessitated the raising of the ramp and the building of it further back towards Second street, the effect of which was to partially cut off the view of the display or show windows on the Murray street side of the building.

In order to move and reconstruct the levee, the governmental authorities found it necessary to expropriate certain property to the rear of the building, but no part of the store building or of the lot on which it was built was taken, nor was the sidewalk along the Murray street side of the building disturbed. The sidewalk on that side was left as it was originally built, but was considerably below the ramp as reconstructed.

Plaintiff contends that he is entitled to diminution of the rent on account of these changed conditions which took place subsequent to the date on which the lease was entered into. His complaint is that these changes have made his lease less valuable than it was when entered into.

We quote the following from the brief filed by plaintiff's counsel:

"It is true that no part of the physical property leased was taken for the public utility and that the conditions specifically described in the petition and which admittedly caused a lessened rental value of the leased premises resulted from the construction on adjoining property of the levee and the ramp extending along Murray street.

"The partial destruction, as above set forth, resulted without fault on the part of the lessor or the lessee. It was caused solely by the governmental agency, already referred to, expropriating the adjoining property and the construction of the levee, which necessitated the reconstruction of the ramp leading to the traffic bridge across Red River.

"The actions of the governmental agencies were in the exercise of legal rights

and for the purpose of public utility. It is apparent that under such circumstances the lessor was without fault and that consequently there is no basis for a claim of damages. * * * The lessee was likewise without fault and the admitted lessened value of the leased premises resulted from the action of governmental agencies in the legal exercise of their powers. While the law does not grant to the lessee a claim for damages it does afford legal redress following the partial destruction of the leased premises."

Plaintiff's counsel further say in their brief:

"The plaintiff's cause of action is governed by the above cited article of the Civil Code (art. 2697.)"

Further on in their brief they say, and it was stated by counsel in oral argument before the court, that plaintiff must recover in this suit under the provisions of this article of the Code or not at all.

It is true, as counsel say, that if a partial destruction of the leased premises occurs during the term of the lease by the taking of it for public purposes, the lessee is entitled to a diminution of the rent for the remainder of the term. The article of the Code so declares. But in this case there was no partial destruction of the "thing" leased, no partial destruction of the leased premises, which was the lot and the store building thereon, and while counsel repeatedly refer in their brief to the "partial destruction of the leased premises," yet their allegations and their brief affirmatively show that no part of the leased property was taken or destroyed. The lot, the store building, the glass display windows, are in precisely the same condition as they were when the lease was entered into. As to the parking space, the lessee no doubt anticipated that it would remain for the use of the public as it had in the past. But that formed no part of the leased premises.

Plaintiff alleged, and it is no doubt true, that the value of the lease was diminished by the construction of the new levee and the new ramp on adjacent property. The store building is probably not as valuable for mercantile purposes now as it was before the change was made. But that affords the lessee no ground for a diminution of the rent under article 2697 of the Civil Code, because the thing leased, the lot and the store building, were not "destroyed in part."

The diminution in the value of the lease is due to no fault of the lessor's, but is due solely to certain constructions made on the adjacent premises by governmental agencies in the exercise of governmental functions. If the government had, under its right of eminent domain, partially destroyed the thing leased, the lessee could have compelled the lessors to reduce the monthly rentals for the remainder of the term. But as no part of the property itself was taken or destroyed, the lessee has no cause of action against the lessor under article 2697 of the Civil Code.

Article 2697 of the Civil Code is not ambiguous. It means, for that is what it says, that if the thing leased (in this case a lot of ground and a store building thereon) perishes by an unforeseen event or if the thing be taken for the purpose of public utility, the lease is at an end, and if the thing leased be destroyed only in part, the lessee may do either one of two things; he may demand a diminution of the price for which the thing was leased or he may demand a revocation of the lease.

Counsel for plaintiff cite the case of Hinrichs v. City of New Orleans, 50 La. Ann. 1214, 24 So. 224, in support of their contention. But the holding in that case does not help them. There the city had leased to plaintiff certain public markets, or rather the revenues thereof, for three years for a stipulated sum. Later on the city found it necessary to widen one of the adjoining streets, and in doing this it encroached on the space occupied by three of the markets, thereby depriving the lessee for the unexpired term of the lease of 64 stalls then rented by the vendors of commodities brought to the market for sale and from which stalls the lessee derived, under the contract, the customary market dues. The lessee brought suit for diminution of the rent, relying upon article 2697 of the Civil Code. The court held that the lessee was entitled to relief under that article because a part of the leased premises, a part of the "thing," had been taken or destroyed by the city for the purpose of public necessity, subject to which all prop-

erty is held. It is clear that the reason for the ruling was that part of the thing leased had been taken for public purposes.

The present case is analogous to that of Chase v. Turner, 10 La. 19. In that case the plaintiff leased to the defendant certain property in the city of New Orleans fronting on the Mississippi river, which embraced the batture. Defendant refused to pay the rental installments and plaintiff, the lessor, brought suit to annul the lease. The defense was that the lessee had been deprived of the privilege of landing boats and rafts and cutting up the same on the batture, by a prohibitory ordinance of the city of New Orleans, and that "the plaintiff has not maintained the lessee in the enjoyment of the property leased." It developed that subsequent to the date on which the lease was entered into the city of New Orleans had passed an ordinance prohibiting the use of the batture for such purposes as the lessee was making of that which was under lease. The lessee alleged that under that ordinance he had been arrested and fined for its violation, and his contention was that inasmuch as he was then prohibited by law from using the property for the purposes for which he had leased it, he was entitled to damages in the sum of $2,000 per year, which sum he asked that plaintiff deduct from the amount of the lease. In that case, the court said:

"But the dilemma put on the defendant by the plaintiff's counsel, seems unanswerable: either the city ordinance is a legal ex-

ercise of the right of police, or it is not. If it be legal, the defendant was bound to know the right of the corporation [meaning the City of New Orleans] to pass it, and his duty to conform to it. If the ordinance be not legal, this case does not present one of those disturbances against which the lessor is bound to defend the lessee; for the corporation claims no right in the premises, but only the right of making police regulations in relation to them. The lessee must protect himself." Citing Civil Code, art. 2673, which is article 2703 under the present Code, which reads as follows: "The lessor is not bound to guarantee the lessee against disturbances caused by persons not claiming any right to the premises; but in that case the lessee has a right of action for damages sustained against the person occasioning such disturbance."

The court further said:

"Nothing is said in the lease of any particular use to which the premises were to be applied; and if anything had been said, the case could only have come within the provisions of law." Citing Civil Code, art. 2669, now article 2699, which reads as follows: "If, without any fault of the lessor, the thing cease to be fit for the purpose for which it was leased, or if the use be much impeded, as if a neighbor, by raising his walls shall intercept the light of a house leased, the lessee may, according to circumstances, obtain the annullment of the lease, but has no claim for indemnity."

In the case of Nicholls v. Byrne, 11 La. 170, 171, where the issue involved was almost identical with that in Chase v. Turner, supra, the court said:

"The contract of lease does not specify the purposes to which the lot was to be appropriated; and if it had, it is not clear that it would in any manner affect the law of the case. The good government of the city requires that all its police-regulations should extend alike to every lessee and land holder within its incorporated limits. If the ordinance were unlawful the lessee could protect himself; if lawful, he has no right to complain." Citing Civil Code, art. 2673, now article 2703.

The holding in these two cases was reaffirmed in Dennistoun v. Walton, 8 Rob. 211, 214. In Abadie v. Berges, 41 La. Ann. 281, 6 So. 529, the court held that:

"A landlord cannot be held to warranty and indemnity against the 'acts of the law,' in the absence of express stipulation to that end." Paragraph 3 of syllabus.

In the instant case the inconveniences which brought about a diminution in the value of the lease were caused by the "acts of the law," and inasmuch as no part of the leased premises was actually taken or destroyed, plaintiff has no cause of action under article 2697 of the Civil Code. Whether he has a cause of action under other provisions of the Code is a question which is not before us.

The judgment appealed from is affirmed.

O'NIELL, C. J., absent.