## MATHEWS v. PRIEST. *
### No. 5078.

Court of Appeal of Louisiana. Second Circuit.

Feb. 5, 1936.

Lee J. Novo, of Alexandria, for appellant.

J. B. Nachman, of Alexandria, for appellee.

HAMITER, Judge.

This suit is based on an alleged oral contract of lease. Joseph Mathews claims from Guy Priest the sum of $184 as rental for one year on a 23-acre tract of land in Rapides parish, at the rate of $8 per acre. A writ of provisional seizure was

issued under which the sheriff of Rapides parish seized and took into official possession several bales of cotton and other property found on the tract.

On November 21, 1933, the parties entered into an agreement whereby plaintiff was to sell the 23 acres of land in question to defendant on terms of cash and credit. It was understood that a survey would be made to establish the correct lines of the property and to obtain a proper and accurate description; and that Mathews would obtain releases of the tract from the effect of existing mortgages held by the Union Central Life Insurance Company and the Guaranty Bank & Trust Company, covering this and other property owned by him. At the time of this agreement Priest made a cash payment of $100 and promised to make an additional payment of $400 on the obtaining of title. They further agreed that should Mathews be unable to obtain the releases, the $100 would be returned to Priest.

On November 29, 1933, the survey having been made, the parties met in the office of K. Hundley, an attorney of Alexandria, La., and a notary public of Rapides parish. At this meeting a credit deed, purporting to transfer title to the property from Mathews to Priest, was signed by both parties, but was not passed by a notary public, and notes for the credit part of the agreed purchase price were executed by defendant. The property being still encumbered by the mortgages, and the agreement providing for an unencumbered title to be furnished, it was decided that Hundley should hold in escrow the required cash consideration, the remainder of which Priest paid, the signed notes, and the credit deed, until the necessary releases of the mortgages were secured. Much effort was put forth thereafter by Mathews and others to obtain such releases, but without avail.

The record shows that defendant took possession of the 23-acre tract during the latter part of December, 1933, by placing thereon his brother, who immediately commended and thereafter carried on farming operations on it.

During the early part of the year 1934, Priest went to Hundley's office and withdrew the cash payment and the papers connected with the transaction.

Further negotiations with reference to the proposed sale took place in the month of June, 1934, when Mathews and Priest called at the Guaranty Bank & Trust Company, the holder of one of the mortgages, and enlisted the assistance of its vice president, J. W. Beasley, in attempting to obtain the desired releases. The Union Central Life Insurance Company refused to grant a partial release, as requested by such bank, but was willing to and did sell and convey its entire mortgage, and notes pertaining thereto, to the Guaranty Bank & Trust Company. No further dealings were had by Priest with such bank relating to the purchase of the property. The sale from Mathews to Priest was never consummated.

On August 24, 1934, Mathews sold and transferred, by a general warranty deed, unto the Home Building & Loan Association of Rapides parish, a portion of the property involved herein, being approximately five acres, and on that same day such portion was transferred by the association, under a similar deed, to one Benjamin H. Baker.

Plaintiff contends that, after signing and placing in escrow the credit deed to the property, he and Priest waited several weeks for the release from the Union Central Life Insurance Company's mortgage, but without receiving it; that, because of the delay, it appeared very doubtful to him that the holder would grant the release, thus preventing the consummation of the sale under the terms of the agreement; and that, as he was anxious to either sell or rent the property before the end of the year, and Priest was desirous of obtaining possession of it, they orally agreed that in the event a release could not be obtained Priest would hold the property under a one-year lease, beginning January 1, 1934, at a rental of $8 per acre, and if the release was later obtained, the sale would be effected and the rental applied on the purchase price.

Defendant denies the making and existence of the oral lease agreement, and takes the position that his possession of the property was as owner and not as lessee; that if such a contract of lease did exist, it was breached by the Baker sale. In connection with his answer, defendant filed a reconventional demand claiming damages for an alleged breach of the contract of sale, but such demand was admittedly abandoned by him during the trial of the case.

There was judgment in favor of defendant, rejecting plaintiff's demands, and plaintiff has appealed.

■ The first question presented for determination is whether or not there existed the one-year oral contract of lease on which plaintiff's suit is based. This is solely one of fact, and the evidence relating to it is conflicting. Obviously, and as disclosed by the record, Priest would not accept title to the property unless and until it was released from the operation of the mortgages resting thereon, and, accordingly, the entire sale transaction was conditioned on the securing of the releases. Several weeks intervened between the date on which the escrow deed was signed by the parties and that of the alleged oral agreement, without the releases being forthcoming. This period of time was sufficient for the preparation and delivery of the instruments necessary in the consummation of the sale, and, not having received them, plaintiff was fully justified in his belief that they might not be granted. Defendant's brother, who farmed the tract for him, asserted that the rent agreement was made. To substantiate his position that he was possessing as owner, defendant calls attention to the negotiations regarding the releases which were carried on with the Guaranty Bank & Trust Company in the month of June, 1934. These negotiations took place more than six months after the date of signing the undelivered deed, and after the withdrawal by defendant of the cash payment and papers which had been previously deposited with Hundley.

Although plaintiff's suit was dismissed in the district court, the trial judge found as a fact that the oral contract of lease was entered into by and between plaintiff and defendant. In the per curiam, which is in the record, he states: "In my oral opinion I stated that the question involved was mainly a question of fact. That I found that a preponderance of the evidence was in favor of the plaintiff's contention that a verbal contract of lease had been entered into between plaintiff and defendant pending the delays that prevented the consummation of the sale passed between the plaintiff and defendant, to take effect upon plaintiff's cancelling a mortgage thereon, which mortgage plaintiff failed to have cancelled."

The appellate courts of Louisiana have in numerous cases enunciated the doctrine that the finding of fact made by a trial court, and particularly where the testimony is conflicting, will not be disturbed where not manifestly wrong. We are unable to say that the finding in favor of plaintiff on this question of fact was manifestly wrong.

The trial judge decreed the dismissal of the suit on the ground that plaintiff violated the terms of the lease, and released defendant from any liability thereunder, when he sold a portion of the property to the Home Building & Loan Association and the association immediately conveyed it to Baker.

■ Conceding that the title to a portion of the leased lands passed from Mathews to Baker, and this is fully disclosed by the record, such transfer alone had no effect on the rent agreement in so far as the defendant is concerned. Ownership in plaintiff was unnecessary to continue the lease. Article 2681 of the Revised Civil Code provides: '"He who possesses a thing belonging to another, may let it to a third person, but he can not let it for any other use than that to which it is usually applied."

In the case of Spence v. Lucas, 138 La. 763, 70 So. 796, 798, we find: "When Silliman Lucas entered into the contract of lease with R. W. Davis, she was the owner, in indivision, with her four children, of the property leased. Nevertheless she leased the whole property to Davis. The lease was valid; for ownership is not essential to make a valid contract of lease"; and leases have been enforced against lessees where the lessors were not the owners of the real property leased. Spence v. Lucas, supra; Chase v. Turner, 10 La. 19; Tippet v. Jett, 10 La. 359; Nicholls v. Byrne, 11 La. 170; Dennistoun v. Walton, 8 Rob. 211; Sientes v. Odier, 17 La.Ann. 153.

■ A lessee sued for rent, and in undisturbed possession of the leased premises, cannot contest the lessor's title. Sientes v. Odier, supra.

■ Defendant Priest obtained possession of the property at the beginning of the lease, and it was encumbent upon plaintiff to maintain him in undisturbed possession of the entire tract throughout the agreed period.

"He who lets out the property of another, warrants the enjoyment of it against the claim of the owner." Article 2682, Revised Civil Code.

■ If defendant had been denied the enjoyment of the portion sold to Baker, a different situation might be presented. But

the record is barren of any evidence tending to show that he was deprived of peaceable possession of any part of the leased property, and the burden of proving such deprivation, if it occurred, was upon defendant.

"But if an affirmative contract to pay money or to perform some duty is proved, it is then incumbent on defendant to prove payment, performance, or tender, or a sufficient excuse therefrom." 13 Corpus Juris, Contracts, § 958.

Considering the existence of the oral contract of lease, and that the defense urged herein is not well founded, we think the trial judge erred in rejecting plaintiff's demands.

For the reasons stated, it is therefore ordered, adjudged, and decreed that the judgment of the trial court be reversed, and that there now be judgment in favor of plaintiff and against defendant in the sum of $184, together with 5 per cent. per annum interest thereon from judicial demand until paid; that the writ of provisional seizure issued herein be maintained; and that defendant and appellee pay all costs of both courts.