Nicholas D. OLIVIER, Plaintiff,

v.

HUMBLE OIL & REFINING COMPANY, Defendant.

Civ. A. No. 13496.

United States District Court
E. D. Louisiana,
New Orleans Division.

March 11, 1968.

Arthur C. Reuter, Reuter, Reuter & Schott, New Orleans, La., for plaintiff,

Nicholas D. Olivier, Elmo Laudumiey, defendant, and Mrs. Lillian C. Stevens, Testamentary Executrix of the Succession of Noah S. Cutrer, defendant.

Bernard J. Caillouet, W. K. McAnelly, Jr., Andrew McCollam, Jr., L. K. Benson, Jr., H. H. Hillyer, Jr., New Orleans, La., for Humble Oil and Refining Co., defendant.

H. M. Holder, Shreveport, La., C. C. Richmond, Melvin Evans, Charles B. Jarrett, New Orleans, La., for Gulf Oil Corp.

Morris Wright, New Orleans, La., for William G. Helis, Jr. and The Estate of William G. Helis.

COMISKEY, District Judge.

Nicholas D. Olivier, plaintiff, holds an overriding royalty in a lease wherein Humble Oil & Refining Company is named the lessee and Dr. Noah S. Cutrer is the lessor. The lease is dated December 19, 1953 and covers certain property in Plaquemines Parish, Louisiana, part of which property consists of 57.36 acres of land which is the area disputed in this case.

Four years before Humble got its lease from Cutrer on October 31, 1949, a lessor, referred to as the "Perez group", leased the identical property to William Helis, now deceased, who in turn granted overriding royalties which are now held by William Helis, Jr., Elmo Laudumiey and Mrs. Lillian C. Stevens, Testamentary Executrix of the Succession of Dr. Noah S. Cutrer. In the latter part of 1958, lessee Humble and lessee William Helis (now known as the Estate of William G. Helis) entered into an operating agreement with the Gulf Oil Corporation wherein Humble contributed its lease, Helis contributed its lease (both covering the same property) and other leases held by these parties and named Gulf the operator. Gulf commenced drilling operations and completed a well on the disputed acreage on December 18, 1958 from which production has continued to date.

Plaintiff Olivier filed this suit against Humble for payments on his overriding royalty and Humble obtained an interpleader bringing in various parties. Accordingly, lessee, Estate of William G. Helis, and overriding royalty claimants William G. Helis, Jr., Elmo Laudumiey, and Mrs. Lillian C. Stevens, Testamentary Executrix of the Succession of Noah S. Cutrer were made parties, along with Gulf. This interpleader places before the court the two conflicting lessees, i. e., Humble and the Estate of William G. Helis, and the two sets of conflicting overriding royalty claimants, namely, plaintiff Olivier under the Humble lease and impleaded parties Elmo Laudumiey, William G. Helis, Jr. and Mrs. Lillian C. Stevens, Testamentary Executrix of Succession of Dr. Noah S. Cutrer under the Estate of William G. Helis lease. The dispute has been previously recognized to be which lease is superior, i. e., the lease to Humble or the lease to Estate of William G. Helis. To decide which lease is superior requires an examination of which lessor—Cutrer or the "Perez group" had title at the time the respective leases were granted.

The title of lessor, Dr. Noah S. Cutrer is based on his acquisition of the subject property by act under private signature dated December 27, 1938 from the Plaquemines Land Company registered in C.O.B. 103, folio 322 on May 16, 1941 in the Parish of Plaquemines.

It is undisputed that the "Perez group" acquired what title, if any, it had to grant its lease to Estate of William G. Helis in a tax sale held in the Parish of Plaquemines on February 17, 1945 wherein the LaGrange Realty Company, Inc. bought the property for the unpaid 1943 state taxes. LaGrange Realty Company Inc. is the predecessor of the "Perez group" who appears as lessor to Helis. This tax sale was recorded on March 2, 1945 in the records of the Clerk of Court for the Parish of Plaquemines, ex officio Register of Conveyances, at C.O.B. 114, folio 53.

On March 1, 1948, one day before the three year preemptive period expired during which period the property could be

redeemed [1] by the tax debtor who appears as *Mrs.* Noah S. Cutrer, Dr. Noah S. Cutrer, the tax debtor's husband, sought and obtained a redemption of the tax sale. The redemption recites the payment of back taxes, interest, and penalties and effectively redeemed the property for the tax debtor shown as *Mrs.* Noah S. Cutrer in the tax sale. While there is nothing in the record to show that Dr. Noah S. Cutrer was acting for his wife, there is in the record evidence that at this time Dr. and Mrs. Noah S. Cutrer were married, not judicially separated, and were presumptively living under the benefits of the community property laws of Louisiana, with Dr. Cutrer as head and master of the community.

As previously stated, the "Perez group" granted on October 31, 1949 a lease (known too as the Upper Realty Inc. lease) to William Helis and the rentals were regularly paid until exploration was commenced with the first well completed on December 18, 1958. Dr. Noah S. Cutrer, on the other hand, on December 19, 1953, presumably relying on the validity of the redemption of March 1, 1948, granted the conflicting lease (known too as the Cutrer lease) on the identical property to Humble. Humble in turn granted the overriding royalty which is the basis of plaintiff's claim.

So that exploration could go forward, the operating agreement naming Gulf as operator took care of this conflict between conflicting lessees, namely Humble and Helis, but did not resolve the conflicting overriding royalties each lessee had granted. The operating agreement, rather, merely provided that each party to the agreement shall pay its own overriding royalties and presumably relegated the question of who should pay and who should receive overriding royalties to this day when finally the conflicting overriding royalty owners' claims would be resolved. The following language is found in the operating agreement:

Paragraph XX

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

"(b) Each party hereto shall pay or arrange for the payment of all royalties, overriding royalties and other payments out of or measured by production attributable to the lease or leases contributed by such party to the Contract Area; however, the royalties, overriding royalties and other payments out of or measured by production payable under the leases covered hereby shall be borne by the parties hereto in the following manner:

| | |
|---|---|
| Louisiana State Lease 195 | Gulf ½<br>Helis ½ |
| Noah S. Cutrer Lease and<br>Upper Realty Inc. et al Lease | Humble ⅚<br>Gulf ¹⁄₁₂<br>Helis ¹⁄₁₂ |
| Murray Sawyer Smith Lease | Humble All." |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*

---

In July of 1958, Dr. Noah Cutrer and his co-owner, more than thirteen years after the tax sale to the "Perez group", filed a suit in the State Court of Plaque-

---

[1]. Constitution of the State of Louisiana, Article 10, § 11 " \* \* \* the property sold should be redeemable at any time during three years from date of recordation of the tax sale, by paying the price given, including costs and five per cent penalty thereon, with interest at the rate of one per cent per month until redeemed."

mines Parish to annul the tax sale and cure the Cutrer title apparently convinced that Dr. Cutrer's redemption on March 1, 1948 was not too valid coupled with the fact that the tax title was still of record and certainly clouded Dr. Cutrer's title. Probably that suit came too late, namely, more than five years from the date of the recordation of the tax deed.[2] The suit was never tried in regular fashion. Instead, Dr. Cutrer and his co-owner obtained a "quit-claim"[3] from all members of the "Perez group" to the contested property and then obtained a consent judgment on January 30, 1959 with the hope that this would perfect Dr. Cutrer's title. This "quit-claim" and consent judgment therefore merged the outstanding tax title back into the chain of title on which Dr. Cutrer relies. However, this was the second time the "Perez group" tax title was merged back into the chain of title on which Dr. Cutrer relies. The first time was the redemption of the tax title by Dr. Cutrer on March 1, 1948.

Olivier demands payment of his overriding royalty from lessee Humble. William Helis, Jr., Elmo Laudumiey, and Mrs. Lillian C. Stevens, Testamentary Executrix of Succession of Noah S. Cutrer, demand payment of their overriding royalty from lessee Estate of William G. Helis. Both lessees—Humble and Helis—hold leases on identical property from two different sets of lessors, namely, Dr. Noah S. Cutrer and Estate of William G. Helis. Olivier contends for the validity of the Humble lease based on the validity of Dr. Cutrer's title when he granted the lease on December 19, 1953; Elmo Laudumiey, William G. Helis, Jr. and Mrs. Lillian C. Stevens, Testamentary Executrix of Succession of Dr. Noah S. Cutrer contend for the validity of the Estate of William G. Helis lease based on the validity of the "Perez group" title when that group granted the lease on October 31, 1949. Furthermore, Elmo

Laudumiey, William G. Helis, Jr., and Mrs. Lillian C. Stevens, Testamentary Executrix of Succession of Dr. Noah S. Cutrer contend that in the event the "Perez group" title was not valid when the lease to Estate of William G. Helis was granted, it has now been validated and does in fact encumber the property because of the sale and quit-claim from the "Perez group" to Dr. Cutrer which was the basis for the consent judgment in the State Court on January 30, 1959. This contention is without merit if we hold the "Perez group" title was nonexistent on October 31, 1949 for the reason that redemption of the tax title was effected on March 1, 1948. We so hold. One further contention is raised by Elmo Laudumiey, William G. Helis, Jr. and Mrs. Lillian C. Stevens, Testamentary Executrix of Succession of Dr. Noah S. Cutrer to the effect that plaintiff Olivier is estopped from denying validity of the Perez lease, through whom they claim. The plea of estoppel is grounded on the fact that plaintiff Olivier now stands as co-lessor with Dr. Cutrer since plaintiff owns an undivided interest in the Cutrer title. But this argument is also based on the assumption that the "Perez group" title was extant when it leased to Estate of William G. Helis. We find no title (tax or otherwise) to have been extant in the "Perez group" when it "leased" to Estate of Helis on October 31, 1949. This holding does not conflict with the case of Spence v. Lucas, 138 La. 763, 70 So. 796 (1916). In the *Spence* case the issue was whether or not a mineral lease granted by an owner of an undivided one-half interest in land followed that undivided interest when it was sold to a third party. The court recognized the right of an owner of an undivided interest in land to lease "such right in and to her undivided one-half of the property * * *." The Court said further that the mineral lessee's "demand for recognition of the lease as bearing upon the

2. Article 10, § 11 Constitution of the State of Louisiana.

3. This document is entitled "quit claim" by the parties to the instrument. How-

ever, the Court makes no finding on the correctness of this appellation as applied to its contents.

undivided one-half of the property owned by Silliman Lucas at this time is recognized." But the court did not find the lease valid as to the undivided one-half of the property which was not owned by Silliman Lucas. Correspondingly, we do find the Perez lease to Estate of William Helis invalid on property to which the "Perez group" lessor had *no* title.

■ The only attack on the validity of the Cutrer redemption on March 1, 1948 registered on March 2, 1948 in the office of the Clerk of Court of Plaquemines Parish, is the fact that the redeeming was gotten by Dr. Cutrer whereas the tax sale shows the tax debtor to be Mrs. Noah Cutrer. Louisiana law and jurisprudence favors redemption of property sold for unpaid taxes as long as the redemptor's interests are not inimical to the tax debtor.

LSA–R.S.—47:2222

\* \* \* \* \* \*

"In all cases where *two or more lots or parcels of land have been assessed as a whole without distinguishing the valuation of each lot or parcel separately and have been adjudicated as a whole to a tax purchaser in the name of any one person, the owner or any person interested personally, or as heir, legatee, creditor, or otherwise, may redeem a lot or lots or parcels of ground by paying to the tax purchaser* the proportionate taxes due thereon together with interests, costs and five per centum (5%) penalty thereon." (Emphasis added)

In In re Berry, La.App., 148 So.2d 313 (1963) the Court recognized with liberality the right of a person to redeem property sold for unpaid taxes when it sustained a redemption by a relative of the tax debtor through an attorney employed by the relative and not the tax debtor. *Berry* cited State ex rel. Busha's Heirs v. Register of Conveyances, which stresses the liberal allowance of redemption of tax sales in favor of the owners:

"Thus in State ex rel. Busha's Heirs v. Register of Conveyances et al., 113 La. 93, 36 So. 900, our Supreme Court stated:

'We think that any one may, for the advantage of the owner, as negotiorum gestor, make payment for him of the redemption money, even without his knowledge. Civ.Code, arts. 2133, 2134. There is a great difference between redemption under a conventional sale with power of redemption and redemption under a tax sale. In the former the title is transferred by the consent of the owner with conventional obligation assumed by the transferee on the requirement of the owner to transfer to him. Unless and until the former owner exercises this right, the title to the property remains where the former owner had himself placed it. In a tax sale the owner has given no consent; on the contrary, so far as he is concerned, the sale is an enforced one, and adverse to his interests.' "

■ The thrust of this case and others in Louisiana shows the favorable attitude Louisiana has for redemptions of tax sales versus tax titles. The only difference between our case and the jurisprudence is that the redemptions referred to were made *in the name of the tax debtor.* In our case the redemption was sought by Dr. Noah S. Cutrer, and the redemption was executed in his favor. The only variance between the tax sale and the tax redemption is the fact that in the former the property sold was purportedly assessed in the name of *"Mrs. N. S. Cutrer"* while in the latter the property was purportedly assessed in the name of "N. S. Cutrer" and redeemed by "Dr. Noah S. Cutrer". Nothing in the record shows or even intimates that "Mrs. N. S. Cutrer" ever objected to the redemption by her husband from whom she was not separated and with whom she enjoyed the existence of a community of acquets and gains. Accordingly, this Court finds the redemption valid, and, as such, the redemption cancelled any title the "Perez group" might have owned by virtue of the tax sale to LaGrange Realty Company, Inc. on February 17, 1945.

In LaFrenz v. LaBaw, 23 So.2d 780, 781 (La.App.2nd Cir. 1945) the point was made that the very payment of money to the Sheriff ex officio Tax Collector to redeem property sold for unpaid taxes terminates all rights of the tax purchaser in the property:

"Regardless of any right which intervenor [tax title purchaser] originally might have asserted, it is evident that his rights ceased upon payment into the hands of the sheriff of the sums necessary to redeem."

In view of the foregoing, the claim of plaintiff, Nicholas D. Olivier, against the defendant, Humble Oil and Refining Company for overriding royalties is granted, and all other claims by William Helis, Jr., Elmo Laudumiey, and Mrs. Lillian C. Stevens, Testamentary Executrix of the Succession of Noah S. Cutrer, Estate of William G. Helis, and Gulf Oil Corporation are denied.

It is directed that counsel for all parties submit a draft of a proposed judgment.